SHORT RECORD
NO. 24-8017
FILED 05/20/2024

No. 24-____

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

MONICA RICHARDS, individually and on behalf of all other similarly situated individuals

*Plaintiff-Respondent*,

v.

ELI LILLY & COMPANY; LILLY USA, LLC,

*Defendants-Petitioners*.

---

**Appeal from the United States District Court for the Southern District of Indiana, No. 1:23-cv-242-TWP**

---

**PETITION FOR PERMISSION TO APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

---

Joseph J. Torres
Andrianna D. Kastanek
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350
jtorres@jenner.com
akastanek@jenner.com

Yaakov M. Roth
JONES DAY
51 Louisiana Ave. NW
Washington, DC  20001
(202) 879-3939
yroth@jonesday.com

James R. Saywell
JONES DAY
901 Lakeside Ave. East
Cleveland, Ohio 44114
(216) 586-3939
jsaywell@jonesday.com

*Counsel for Petitioners*

## CIRCUIT RULE 26.1 STATEMENT

Petitioner Eli Lilly & Co. has no parent corporation, and no publicly-held company or investment fund owns a 10% or greater interest in the company's common stock.

Petitioner Lilly USA, LLC is not a publicly traded company. Eli Lilly & Co. is the sole member of Lilly USA, LLC, and thus constitutes its parent corporation.

Jenner & Block LLP and McGuireWoods LLP have appeared for Petitioners in the district court. Jones Day and Jenner & Block LLP will represent Petitioners in this Court.

Dated: May 20, 2024                    /s/ Yaakov M. Roth
                                       Yaakov M. Roth

                                       *Counsel for Petitioners*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

QUESTION PRESENTED .................................................................................. 3

RELIEF SOUGHT ............................................................................................... 3

BACKGROUND .................................................................................................. 3

ARGUMENT ........................................................................................................ 8

I.    THE STANDARD FOR CONDITIONAL CERTIFICATION AND NOTICE IS A
      CONTESTABLE AND CONTROLLING QUESTION OF LAW THAT IS BEST DECIDED
      NOW .............................................................................................................. 8

      A. The Legal Standard Is a Controlling Question of Law ...................... 8

      B.  Courts Are Divided Over the Appropriate Legal Standard ............ 11

      C.  Resolving the Legal Standard Now Would Advance the Litigation .............. 14

II.   THE COURT SHOULD EXERCISE ITS DISCRETION TO ALLOW THIS APPEAL .................. 16

CONCLUSION .................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ahrenholz v. Bd. of Trs. of the Univ. of Ill.,*
219 F.3d 674 (7th Cir. 2000) .........................................................................8, 16

*Baptist v. City of Kankakee,*
481 F.3d 485 (7th Cir. 2007) ................................................................................8

*Bergman v. Kindred Healthcare, Inc.,*
949 F. Supp. 2d 852 (N.D. Ill. 2013) ..............................................................4, 12

*Bigger v. Facebook, Inc.,*
947 F.3d 1043 (7th Cir. 2020) ..................................................... *passim*

*Brant v. Schneider Nat'l Inc.,*
2023 WL 4042016 (E.D. Wis. May 4, 2023) .......................................................14

*Calloway v. AT&T Servs., Inc.,*
2024 WL 1328823 (N.D. Ill. Mar. 28, 2024) ...............................................14, 17

*Carter v. Indiana State Fair Comm'n,*
2012 WL 4481348 (S.D. Ind. Sept. 28, 2012) .....................................................12

*Clark v. A&L Homecare & Training Ctr., LLC,*
68 F.4th 1003 (6th Cir. 2023) ...................................................... *passim*

*Curless v. Great Am. Real Food Fast, Inc.,*
280 F.R.D. 429 (S.D. Ill. 2012) ..........................................................................12

*Espenscheid v. DirectSAT USA, LLC,*
705 F.3d 770 (7th Cir. 2013) ...........................................................................3, 15

*Fillipo v. Anthem Cos.,*
2022 WL 18024818 (S.D. Ind. Dec. 30, 2022) ...................................................14

*Fitzgerald v. Forest River Mfg. LLC,*
2022 WL 558336 (N.D. Ind. Feb. 23, 2022).......................................................17

*Flores v. Lifeway Foods, Inc.,*
    289 F. Supp. 2d 1042 (N.D. Ill. 2003) ....................................................4

*Genesis Healthcare Corp. v. Symczyk,*
    569 U.S. 66 (2013) ....................................................................................3

*Hoffmann-La Roche Inc. v. Sperling,*
    493 U.S. 165 (1989) ..........................................................................3, 4, 13

*In re New Albertsons, Inc.,*
    2021 WL 4028428 (7th Cir. Sept. 1, 2021) ..........................................17

*In re Miedzianowski,*
    735 F.3d 383 (6th Cir. 2013) ..................................................................11

*In re Text Messaging Antitrust Litig.,*
    630 F.3d 622 (7th Cir. 2010) ....................................................................9

*Ivery v. RMH Franchise Corp.,*
    280 F. Supp. 3d 1121 (N.D. Ill. 2017) ................................................4, 5

*Jirek v. AstraZeneca Pharms. LP,*
    2024 WL 2207634 (N.D. Ill. May 14, 2024) ........................................17

*Johnson v. Burken,*
    930 F.2d 1202 (7th Cir. 1991) ................................................................11

*Lusardi v. Xerox Corp.,*
    118 F.R.D. 351 (D.N.J. 1987) ...................................................... *passim*

*Lusardi v. Xerox Corp.,*
    122 F.R.D. 463 (D.N.J. 1988) ................................................................12

*McColley v. Casey's Gen. Stores, Inc.,*
    559 F. Supp. 3d 771 (N.D. Ind. 2021) ..............................................14, 17

*Miller v. St. Clair Cnty.,*
    2024 WL 2133799 (S.D. Ill. May 13, 2024) ..........................................17

*Morgan v. Family Dollar Stores, Inc.,*
    551 F.3d 1233 (11th Cir. 2008) ..............................................................13

*Nick v. Koch Meat Co.*,
    265 F. Supp. 3d 841 (N.D. Ill. 2017) ...................................................................4

*Nuclear Eng'g Co. v. Scott*,
    660 F.2d 241 (7th Cir. 1981) ...........................................................................16

*O'Neil v. Bloomin' Brands Inc.*,
    2023 WL 8802826 (N.D. Ill. Dec. 19, 2023) ...................................................14

*Richardson Elecs., Ltd. v. Panache Broad. of Penn., Inc.*,
    202 F.3d 957 (7th Cir. 2000) ...........................................................................18

*Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*,
    86 F.3d 656 (7th Cir. 1996) .......................................................................10, 11

*State Farm Mut. Auto. Ins. Co. v. Boellstorff*,
    540 F.3d 1223 (10th Cir. 2008) ........................................................................11

*Sterk v. Redbox Automated Retail, LLC*,
    672 F.3d 535 (7th Cir. 2012) ...........................................................................16

*Swales v. KLLM Transp. Servs., LLC*,
    985 F.3d 430 (5th Cir. 2021) .................................................................. *passim*

*Thomas v. Maximus, Inc.*,
    2022 WL 1482008 (E.D. Va. May 10, 2022) .....................................................9

*Van Note v. Int'l Flavors & Fragrances, Inc.*,
    2024 WL 1994314 (C.D. Ill. May 3, 2024) .......................................................14

*Vanegas v. Signet Builders, Inc.*,
    2023 WL 5663259 (W.D. Wis. Sept. 1, 2023) ..............................................9, 18

*Waggoner v. US Bancorp*,
    110 F. Supp. 3d 759 (N.D. Ohio 2015) ..............................................................4

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .......................................................................................5, 6

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
    516 U.S. 199 (1996) ...........................................................................................3

*Zavala v. Wal-Mart Stores, Inc.,*
    691 F.3d 527 (3d Cir. 2012) ...................................................................13

STATUTES

28 U.S.C. § 1292 ............................................................................ *passim*

29 U.S.C. § 206 ...................................................................................16

29 U.S.C. § 216 ................................................................................1, 3

29 U.S.C. § 626 ................................................................................1, 3

## INTRODUCTION

The district court below conditionally certified a sweeping nationwide collective on the thinnest of evidentiary foundations, but certified that order to this Court for guidance on the governing legal standard.  This Court should allow the appeal.  Resolving this controlling legal question would materially advance the litigation, *see* 28 U.S.C. § 1292(b), and district courts in this Circuit have expressed the need for clarification of the law on this important and recurring issue.  Any such clarification could come only through an interlocutory petition like this one, because the question will almost always be moot by final judgment, and the law is too uncertain to justify mandamus relief.  That is why two other Courts of Appeals have, over the past few years, granted § 1292(b) petitions raising the same basic threshold question—and in both cases squarely *rejected* the singularly lax standard applied by the district court below.  This Court should do the same.

Under the Fair Labor Standards Act (FLSA), groups of "similarly situated" employees may sue collectively.  29 U.S.C. § 216(b).  Other statutes—including, as relevant here, the Age Discrimination in Employment Act (ADEA)—incorporate that regime.  *Id.* § 626(b).  For several decades, district courts generally proceeded by conditionally "certifying" a collective—and ordering notice to all its members—based on a "modest factual showing" of similarity so "modest" it is almost impossible *not* to satisfy.  Under that approach, all meaningful review of whether the evidence supports collective adjudication is deferred until a second step—one that does not occur until *after* possible members of the collective are solicited to sue and *after* full merits discovery is completed (assuming, of course, that the artificially inflated litigation does not settle before then).

In the last few years, the Fifth and Sixth Circuits have each taken up interlocutory appeals to consider this approach—known as the *Lusardi* standard, after the decision that created it, *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987)—and rejected it. *See Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430, 433 (5th Cir. 2021); *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1008 (6th Cir. 2023). Notifying a collective without any serious review of whether its members are "similarly situated," both Circuits agreed, finds no support in the statutory text, contradicts the ordinary rules of civil procedure, and serves only to impermissibly stir up meritless litigation. This Court has expressed its own reservations about overbroad collective notice, remarking that it "misinform[s]" recipients while "unfairly amplify[ing] settlement pressure." *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 (7th Cir. 2020). But most district courts in this Circuit (including the court below) have continued to follow *Lusardi* absent contrary direction from this Court.

By also certifying its order for interlocutory appeal, though, the district court offered this Court the opportunity to provide that much-needed direction—and to set the law straight. Petitioners (Lilly) respectfully ask the Court to seize that opportunity. There is no serious question the § 1292(b) elements are satisfied: There is a "substantial ground for difference of opinion" over the legal test for conditional certification, as the contrary Fifth and Sixth Circuit decisions showcase. And resolving this "controlling question of law" "may materially advance" the litigation, as the district court recognized. Indeed, the legal standard is what dictated (as it often does) the certification of an unmanageable collective—embracing Lilly employees across locations, positions, and business units—based on just a handful of declarations that could not begin to bridge those chasms.

2

In short, because the question presented is an important and recurring one that would otherwise continue to escape appellate scrutiny and leave trial courts without guidance, this Court should allow the appeal.

## QUESTION PRESENTED

A district court overseeing a collective action may authorize notice to "similarly situated" potential plaintiffs. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 168 (1989). May courts order this notice merely upon a "modest showing" of similarity that ignores evidence submitted by the defendant, as the court below held; or should courts use a higher standard and consider all record evidence, as the Fifth and Sixth Circuits have held? *See* Dkt. 102 at 12; *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996).

## RELIEF SOUGHT

Lilly asks this Court to permit an appeal from the district court's order of March 25, 2024 (Dkt. 82; Ex. A), as certified by the district court on May 10, 2024 (Dkt. 102; Ex. B).

## BACKGROUND

**1.** The FLSA and ADEA authorize an employee who alleges violation of those laws to sue on behalf of himself and "other employees similarly situated." 29 U.S.C. § 216(b); *see id.* § 626(b) (incorporating § 216(b)). This kind of suit, known as a "collective action," is similar to—but also different from—a Rule 23 class action. Both ask the court to resolve claims for the group as a whole; whether it makes sense to do so thus turns on the same familiar issues of commonality and manageability. *See Espenscheid v. DirectSAT USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013). But a collective action, unlike a class action, requires plaintiffs to opt-*in*. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 73-74 (2013).

Because of the opt-in structure, Congress's "policy that ADEA plaintiffs should have the opportunity to proceed collectively" requires "similarly situated" employees to learn of, and then join, the action. *Hoffmann-La Roche*, 493 U.S. at 170. The Supreme Court has held that district courts may therefore order "notice" of the putative collective action to "similarly situated" employees. *Id.* at 169-73. But the rub comes in determining *which* employees should receive this notice, *when*, and *upon what evidentiary showing*. The Court left those matters open, *id.* at 171; district courts have since enjoyed "little guidance that one can call law." *Clark*, 68 F.4th at 1007.

Filling the vacuum for many courts was a two-step approach first laid out by *Lusardi*. At step one—which governs whether and to whom to send notice—plaintiffs need only make a "modest factual showing" that they and other potential plaintiffs "were victims of a common policy or plan that violated the law." *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003). Courts following this approach "use a 'lenient interpretation' of the term 'similarly situated'"—and a "low standard of proof"—"in deciding whether plaintiffs meet this burden." *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1133 (N.D. Ill. 2017). In conducting that evaluation, courts focus "exclusively on [the] plaintiff's submissions," *Waggoner v. US Bancorp*, 110 F. Supp. 3d 759, 769-70 (N.D. Ohio 2015), and "do[] not … consider opposing evidence presented by a defendant," *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 855-56 (N.D. Ill. 2013). At step one, these courts also decline to consider anything that resembles a "merits issue," even when the issue (such as an individualized defense) bears on the scope or viability of the collective. *Nick v. Koch Meat Co.*, 265 F. Supp. 3d 841, 849, 853-55 (N.D. Ill. 2017).

4

If plaintiffs make this modest showing, courts "conditionally certify the suit as a collective action and allow the plaintiffs to send notice of the case." *Ivery*, 280 F. Supp. 3d at 1133. Only "[t]hereafter," at a second step after "merits discovery is complete—assuming the case has not settled in the meantime, which it usually has—the court takes a closer look at whether th[]e 'other employees' are, in fact, similarly situated." *Clark*, 68 F.4th at 1008. If, after considering all the evidence, the court determines that they never were "similarly situated," the collective gets decertified, meaning the putative plaintiffs were misled and everyone wasted enormous time and money on classwide discovery.

Over the last several years, two sister Courts of Appeals have rejected this two-step framework as misguided and unfair. Court-authorized notice cannot go out, the Fifth and Sixth Circuits have now held, unless the plaintiff *first* makes a meaningful showing (whether by a preponderance of the evidence, or with a strong likelihood) that the employees are in fact "similarly situated." *Clark*, 68 F.4th at 1009-11; *Swales*, 985 F.3d at 434. To make that determination, district courts must consider the entire factual record, not close their eyes to the defendant's evidence. *See Swales*, 985 F.3d at 441. And, as with certification of Rule 23 class actions, district courts must consider "merits" issues that overlap with the similarly-situated determination. *Clark*, 68 F.4th at 1012; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (recognizing that Rule 23 analysis "[f]requently … will entail some overlap with the merits of the … underlying claim," and "[t]hat cannot be helped"). This Court has not yet weighed in, but it has observed that overbroad notice "misinform[s]" its recipients while "unfairly amplify[ing] settlement pressure." *Bigger*, 947 F.3d at 1049.

**2.**  Plaintiff here is a 53-year-old Lilly employee named Monica Richards.  She claims she was denied a promotion because of her age.  And she believes other 40-plus-year-olds may have likewise been harmed by a common plan or scheme in violation of the ADEA.  So she brought a collective action.  *See* Dkt. 82 at 2.

Before any discovery and based only on the complaint and four affidavits (including her own), Richards moved for "conditional certification" of a collective of "[a]ll Eli Lilly employees who were 40 or older when they were denied promotions for which they were qualified, since February 12, 2022."  Dkt. 41 at 1.  That would exceed 1,000 employees across geographies, departments, business units, job positions, supervisors, and every other relevant metric.  Yet Richards failed to identify *a single specific employee* who was similarly situated.  Nor could she explain how such an unbounded collective could be reconciled with "Lilly's organizational structure and discretionary policies used in evaluating employees for promotion."  Dkt. 82 at 11.  *Cf. Dukes*, 564 U.S. at 355-57.

Following *Lusardi*, however, the district court granted the motion.  It acknowledged Lilly's "substantial" evidence that there were no "similarly situated" employees, but it thought this evidence "inappropriate at this step" and refused even to "consider" it.  Dkt. 82 at 7-8; *see also id.* at 8 ("misplaced" at "step one"); *id.* at 11 (declining to "consider opposing evidence").  It was enough that Richards had "show[n] 'some factual nexus' that connects her to 'other potential plaintiffs.'"  *Id.* at 9.  Everything else could be deferred until step two, the court reasoned, when "decertification may be appropriate."  *Id.* at 13.  The court therefore ordered notice to be sent to every Lilly employee over 40 who was denied a promotion since February 2022.

6

Lilly had urged the court to jettison *Lusardi* and align with the Fifth and Sixth Circuits. Despite recognizing that "the two-step process is n[either] statutorily mandated" nor "required by the Seventh Circuit," the district court "decline[d] Defendants' invitation" to apply the heightened-showing tests. *Id.* at 3-6.  Like other courts in this Circuit, it said it would stick with its "modest" and "lenient" test for now, "[i]n the absence of a Seventh Circuit case" saying otherwise. *Id.* at 6.

**3.**  To the district court's credit, though, it gave this Court the perfect opportunity to say otherwise.  After the district court's *Lusardi* "step one" order, Lilly asked it to certify for appeal an "important, recurring, unsettled, and controlling question of law": whether court-authorized notice may issue "upon only a modest showing that the proposed collective is similarly situated to the plaintiff."  Dkt. 88 at 1.  The court agreed with Lilly that its step-one order had all the hallmarks of an order fit for § 1292(b) review.  Dkt. 102. The question presented is purely legal, since it is "focused on 'a plaintiff's *burden of proof* for establishing that the proposed collective is similarly situated before notice may issue.'"  Dkt. 102 at 5-6.  That question is "'controlling' for purposes of § 1292(b)," because it "would certainly affect" the scope, and potentially the bottom-line, of certification. *Id.* at 6.  The question has divided Circuits and district courts throughout the country, having "generated sufficient controversy to justify certification." *Id.* at 7-9.  And an immediate appeal "will—or, at the very least, *may*—materially advance the ultimate resolution of this litigation by resolving uncertainty about the proper scope of the collective." *Id.* at 11. The court accordingly granted certification and stayed the issuance of notice to the putative collective. *Id.* at 12.

## ARGUMENT

### I. The Standard for Conditional Certification and Notice Is a Contestable and Controlling Question of Law That Is Best Decided Now.

Under § 1292(b), this Court may "permit an appeal" from an order certified by the district court where the district court has found the order "involves a controlling question of law as to which there is substantial ground for difference of opinion" and "immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) (restating these "statutory criteria"). The district court correctly certified that its order here satisfies § 1292(b)'s requirements. *See* Dkt. 102.[1]

### A. The Legal Standard Is a Controlling Question of Law.

Lilly proposed—and the district court certified—review of a question of law: namely, the legal test for determining similarity sufficient to send notice to members of a putative collective. It should go without saying that the applicable legal standard is a question of law. *See Baptist v. City of Kankakee*, 481 F.3d 485, 490 (7th Cir. 2007) ("Whether the court applied the correct legal standard is a question of law[.]"). Almost by definition, it can be determined without considering the factual record; it instead concerns *the question the court should ask* about that record. *Ahrenholz*, 219 F.3d at 676-77 (question that court can "decide … without having to study the record" is a "question of law").

---

[1] This Court has also said that the application for certification in the district court must be filed "within a reasonable time after the order sought to be appealed." *Ahrenholz*, 219 F.3d at 675 (emphasis omitted). Here, the district court had no trouble concluding that Lilly's motion—filed a mere 17 days after the Order—was timely. Dkt. 102 at 4 n.1. There is no basis for this Court to question that determination.

For this reason, both the Fifth and Sixth Circuits accepted interlocutory appeals under § 1292(b) of the same legal question presented here. They agreed the question is one of law appropriate for interlocutory consideration. *Swales*, 985 F.3d at 439; *Clark*, 68 F.4th at 1009; *see also, e.g.*, *Thomas v. Maximus, Inc.*, 2022 WL 1482008, at *4 (E.D. Va. May 10, 2022) ("[T]he determination of whether *Lusardi* or *Swales* should control whether a court certifies a collective presents a purely legal question."). This Court, likewise, has found legal questions bearing on the scope of a collective to satisfy the requirements for interlocutory review. *See, e.g.*, *Bigger*, 947 F.3d at 1048 (allowing interlocutory appeal to resolve legal question whether court may authorize notice to individuals ineligible to join collective because of binding arbitration agreements); *Vanegas v. Signet Builders, Inc.*, 2023 WL 5663259 (W.D. Wis. Sept. 1, 2023), *appeal docketed*, No. 23-2964 (7th Cir.) (same, regarding personal jurisdiction as applied to collective actions).

Below, Plaintiff denied there is any question of law, describing the entire enterprise of certification and notice as one left to the district court's "discretion." Dkt. 102 at 5. That label is not "helpful" in assessing suitability for interlocutory review; the relevant dichotomy is between factfinding, on the one hand, and questions that implicate the "main task of an appellate court, which is to maintain the coherence, uniformity, and predictability of the law," on the other. *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 625 (7th Cir. 2010). A legal standard falls on the right side of that line, regardless of how much discretion it affords. *Id.* A rule under which the district court could "certify a collective whenever it wants," for example, would yield unbounded discretion—but the appropriateness of that legal rule would still be a question of law.

9

The legal standard is also a "controlling" question, meaning its resolution "is quite likely to affect the further course of the litigation." *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996).  That is why the legal standard was the focus of the briefing below.  *See, e.g.,* Dkt. 82 at 5 ("Defendants contest the 'modest factual showing' standard at this stage and urge the Court to instead apply the 'preponderance of the evidence' standard").  And it is why the district court resolved that dispute at the threshold (*see id.* at 5-6), with that resolution then dictating the analysis and conclusion that followed (*see, e.g., id.* at 7, 8, 9, 10, 13).

Indeed, the district court admitted that a more rigorous standard would "affect as a practical matter the scope of the notice and the size of the collective."  Dkt. 102 at 6.  And that much could not be clearer from the underlying order.  Repeated throughout was the court's acknowledgement of Lilly's "substantial" evidence, but its simultaneous refusal to even *consider* that evidence at "step one."  Dkt. 82 at 7-8; *see also, e.g., id.* at 9 (finding that Plaintiff's "conclusory and speculative" evidence was nonetheless "sufficient at this step"); *id.* at 10 (deferring until "more stringent second step" any determination of whether collective was bound together by "some plan, policy or instruction").  The loose *Lusardi* standard is the only way the court could justify authorizing notice to an expansive, nationwide collective of Lilly employees—spanning roles, regions, and responsibilities—based on just four scattered affidavits, not a *single* one of which identified a *single* similarly situated employee.  All this abundantly confirms that the legal standard "controlled."

Of course, Plaintiff would be free to argue on remand that certification remains appropriate under a more rigorous legal standard, but that (dubious) prospect does not mean the question is not "controlling." *See Sokaogon Gaming*, 86 F.3d at 659 (question can be "controlling" even if not "certain" to affect future proceedings). After all, "it is never one hundred percent certain in advance that the resolution of a particular question will determine the outcome," so this Court has employed a "flexible" test that asks whether "interlocutory reversal might save time for the district court, and time and expense for the litigants." *Johnson v. Burken*, 930 F.2d 1202, 1205-06 (7th Cir. 1991). As confirmed by the district court itself, the answer here is "yes."

## B.      Courts Are Divided Over the Appropriate Legal Standard.

Section 1292(b) limits interlocutory review to cases involving *debatable* questions—*i.e.*, those presenting a "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). This element is satisfied if "there is a circuit split on a question that our own circuit has not answered." *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013) (emphasis omitted); *see also, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1224 (10th Cir. 2008) (finding this element satisfied because of circuit split). This prong is indisputably satisfied here, because two Circuits have squarely *rejected* the district court's approach (while others have approved it), and this Court has not addressed the issue.

As explained, the district court here applied *Lusardi*, which a district court developed 35 years ago and other courts soon gravitated around. Believing that facilitating notice to a putative collective is "the best way to find out" if that collective has "an honest to goodness case," *Lusardi* granted conditional certification based on nothing more than the

plaintiff's own description of other employees. 118 F.R.D. at 354. The court reserved for "down the road" the determination whether the plaintiffs could show, "from all these notifications, and all this investigation, and all this discovery," that they are actually similarly situated. *Id.* Ironically, when the time came to consider the full factual record and "circumstance[s] of each plaintiff," *id.* at 379-80 — years later at *Lusardi* step two — the court granted the defendant's "motion to decertify," holding that the plaintiffs were not, in fact, "similarly situated" because (as in this case) they were employed in "different departments, groups, organizations, sub-organizations, units and [] offices." *Lusardi v. Xerox Corp.*, 122 F.R.D. 463, 465 (D.N.J. 1988).

Incredibly, district courts applying this framework have watered down the step-one standard even more over the years. Many courts, like the district court here, refuse not only to make any "merits determination[ ]" at step one but even to "consider opposing evidence presented by a defendant." *E.g.*, *Bergman*, 949 F. Supp. 2d at 855-56. All a plaintiff must do is allege similarity and "provide an affidavit, declaration, or other support." *Carter v. Indiana State Fair Comm'n*, 2012 WL 4481348, at *2 (S.D. Ind. Sept. 28, 2012); *see, e.g.*, *Curless v. Great Am. Real Food Fast, Inc.*, 280 F.R.D. 429, 433 (S.D. Ill. 2012). Plaintiffs can practically write their ticket to "conditional certification" and court-authorized notice to a wide set of potential plaintiffs — threatening the defendant with burdensome classwide discovery and amassing potent settlement leverage. *Cf. Bigger*, 947 F.3d at 1049 (expressing concern about notice that "appear[s] to facilitate abuse of the collective-action device").

Over the past few years, however, courts have begun to recognize the flaws with this approach and reject it.  Reasoning from "first principles," especially from "the FLSA's text" and "Supreme Court's [precedent]," the Fifth Circuit in *Swales* used § 1292(b) review to "reject *Lusardi*'s two-step certification rubric."  985 F.3d at 434.  Instead, it held, "a district court must rigorously scrutinize the realm of 'similarly situated' workers, and must do so from the outset of the case, not after a lenient, step-one 'conditional certification.'"  *Id.*  Court-authorized notice—together with the "formidable settlement pressure" that it brings—may occur only *after* the district court considers "all available evidence," to "ensure[] that any notice sent is proper in scope."  *Id.* at 436, 442-43.

The Sixth Circuit in this same § 1292(b) posture likewise rejected sending "notice upon merely a 'modest showing' or under a 'lenient standard' of similarity."  *Clark*, 68 F.4th at 1010.  That approach "'in form or function' resemble[s] 'the solicitation of claims,'" contrary to Supreme Court precedent.  *Id.* (quoting *Hoffmann-La Roche*, 493 U.S. at 174). And it encourages "notice sent to employees who are not, in fact, eligible to join the suit." *Id.*  The Sixth Circuit therefore held that "for a district court to facilitate notice … to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves."  *Id.* at 1011.  Unlike *Lusardi*, this "heightened standard" contemplates early "discovery" and a "requirement to litigate defenses."  *Id.* at 1012 (Bush, J., concurring); *see also id.* at 1009 (majority opinion).

Some other Circuits had previously voiced some approval, usually in dicta after final judgment, for a two-step approach.  *See, e.g.*, *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260-1 (11th Cir. 2008); *Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 527, 536 (3d Cir.

13

2012). And, in the wake of *Swales* and *Clark*, most district courts in this Circuit have stuck to it, simply "[b]ecause most courts have used the two-step approach." *Van Note v. Int'l Flavors & Fragrances, Inc.*, 2024 WL 1994314, at *3 n.3 (C.D. Ill. May 3, 2024); *see also, e.g.*, *O'Neil v. Bloomin' Brands Inc.*, 2023 WL 8802826, at *3 n.2 (N.D. Ill. Dec. 19, 2023); *Brant v. Schneider Nat'l Inc.*, 2023 WL 4042016, at *2 (E.D. Wis. May 4, 2023). *But see Fillipo v. Anthem Cos.*, 2022 WL 18024818, at *2 (S.D. Ind. Dec. 30, 2022) (applying preponderance standard). These courts do so, however, recognizing the conflicting lines of authority, and the absence of definitive guidance from this Court. *See, e.g., McColley v. Casey's Gen. Stores, Inc.*, 559 F. Supp. 3d 771, 776 (N.D. Ind. 2021) (expressing reservations about *Lusardi* but applying it because it "remains the dance of this circuit … for the time being"); *Calloway v. AT&T Servs., Inc.*, 2024 WL 1328823, at *3 (N.D. Ill. Mar. 28, 2024) (applying *Lusardi* while "await[ing]" appellate "instruction on FLSA collective certification"). The presence of these cases, so recurring and so recent, only confirms the "substantial ground for difference of opinion," 28 U.S.C. § 1292(b)—and the prudence of addressing this issue through interlocutory appeal.

## C. Resolving the Legal Standard Now Would Advance the Litigation.

Finally, an interlocutory appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). As the district court put it: "[A]n immediate appeal will—or, at the very least, *may*—materially advance the ultimate resolution of this litigation by resolving uncertainty about the proper scope of the collective as it proceeds, first to the opt-in period, then to the conclusion of discovery, and finally to summary judgment." Dkt. 102 at 11. Exactly right.

14

If this Court agrees that a standard higher than *Lusardi* is warranted, Richards may well be unable to prove that *any* "similarly situated" employees exist. At minimum, the collective would be substantially narrowed. The district court recognized this, both in certifying the appeal (*see id.* at 6, 11), and in originally certifying the collective. In its certification decision, the court repeatedly acknowledged Lilly's "substantial allegations (supported by exhibits and declarations)"—but cast that evidence aside because of the legal standard. Dkt. 82 at 8; *see also, e.g., id.* at 7, 8, 9, 10, 13; *supra* at 10. Under the standard from the Fifth or Sixth Circuits, on the other hand, the court would have to consider "all available evidence." *Swales*, 985 F.3d at 442-43.

Indeed, this case illustrates the dangers of *Lusardi*'s modest-showing standard. There is a glaring mismatch between the "certified" collective (sweeping in all jobs in all Lilly's offices and facilities and departments nationwide), and the evidence Richards proffered in support (affidavits from herself, one former employee who is not even part of the collective, one current employee who never actually applied for any promotions, and one manager who happens to be her boyfriend). Such a request for Rule 23 class certification would properly be laughed out of court. Only *Lusardi* enabled this result. *Cf. Espenscheid*, 705 F.3d at 772 (noting that "there isn't a good reason to have different standards for the certification of the two different types of action").

Regardless of whether a heightened standard eliminates the collective or only limits its scope, resolving that question now would advance the ultimate termination of the litigation, because there would be no need (or reduced need) to notify potential plaintiffs, conduct discovery into their individual claims, and then litigate similarity again at the

"decertification" step. Meanwhile, the magistrate has already relied on the scope of the certified collective to turn discovery into a nationwide fishing expedition. *See* Dkt. 95 at 9 (refusing to limit discovery "by department" because this is an "expansive class action extending across Defendants' large organization").

To be sure, this interlocutory appeal will not resolve the litigation in its entirety. But that is not the test. "[N]either the statutory language nor the case law requires that if the interlocutory appeal should be decided in favor of the appellant the litigation will end then and there." *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012). Rather, so long as a favorable ruling "promise[s] to *speed up* the litigation," this element is met. *Ahrenholz*, 219 F.3d at 675. As the district court appreciated, it is "obvious" that "clarifying the proper scope of the collective, sooner rather than later, would ultimately serve to expedite, not protract, the eventual resolution in this case." Dkt. 102 at 11.

## II. THE COURT SHOULD EXERCISE ITS DISCRETION TO ALLOW THIS APPEAL.

Section 1292(b) review is "within the discretion of a court of appeals"; the Court is not *obligated* to accept the appeal, even with all of the statutory elements met. *Nuclear Eng'g Co. v. Scott*, 660 F.2d 241, 247 (7th Cir. 1981). Here, though, compelling prudential reasons counsel in favor of deciding this appeal on the merits.

*First*, the question arises often. The FLSA collective-action procedure applies not only in FLSA cases, but also in ADEA cases like this one, and in Equal Pay Act cases, too (*see* 29 U.S.C. § 206(d)). For this reason, district courts frequently confront the question presented here—indeed, over 50 district-court orders in this Circuit have spoken to the "two-step" for collective actions in the past three years alone, including two issued just

16

last week. *Miller v. St. Clair Cnty.*, 2024 WL 2133799, at *2 (S.D. Ill. May 13, 2024); *Jirek v. AstraZeneca Pharms. LP*, 2024 WL 2207634 (N.D. Ill. May 14, 2024). Point being, this is a frequently recurring question, which enhances the need for appellate guidance on the applicable legal framework.

*Second*, district courts have repeatedly confirmed they *need* guidance, especially after *Swales* and *Clark*. *See, e.g.*, *Calloway*, 2024 WL 1328823, at *3 ("[L]ower courts await … instruction on FLSA collective certification."); *McColley*, 559 F. Supp. 3d at 775. In the absence of Circuit precedent, some keep applying *Lusardi* even while "bemoan[ing]" it as "unmoored from the statute," "unhinged from any recognized or defined standard for assessing evidence," and "divorced from the goals of enforcement and efficiency." *Fitzgerald v. Forest River Mfg. LLC*, 2022 WL 558336, at *4 (N.D. Ind. Feb. 23, 2022).

*Third*, an interlocutory appeal is likely to be the only way this Court can weigh in on the question. The issue will almost always be moot by final judgment, in light of the "decertification" stage at which the evidence of similarity is ultimately adjudicated. Whether the district court erred by ordering notice earlier, based on an inadequate and one-sided record, will be largely irrelevant by the time of final judgment—the damage will already have been done, and cannot be undone on appeal. Nor is mandamus a plausible remedy, because, as this Court held in *In re New Albertsons, Inc.*, conflicting precedent makes it impossible to maintain that a defendant has a "clear and indisputable" right to relief. 2021 WL 4028428, at *2 (7th Cir. Sept. 1, 2021) (citing "circuit split" and "absence of guidance" in finding no "clear right to relief" without addressing merits). Section 1292(b) certification is therefore the only avenue for appellate clarification of the

law in this area, which weighs strongly in favor of granting this petition. *See Richardson Elecs., Ltd. v. Panache Broad. of Penn., Inc.*, 202 F.3d 957, 958 (7th Cir. 2000) (asking whether immediate review "is necessary to enable meaningful appellate review").

*Finally*, as this Court has cautioned, "the opportunity for abuse of the collective-action device" by plaintiffs who "wield" it "for settlement leverage" makes it crucial that courts not "place a judicial thumb on the plaintiff's side of the case" by authorizing overbroad notice. *Bigger*, 947 F.3d at 1049-50; *see also Swales*, 985 F.3d at 436 ("leniency of the stage-one standard … exerts formidable settlement pressure"). The importance of maintaining judicial neutrality in this process supported interlocutory review of related collective-action notice questions, *see Bigger*, 947 F.3d at 1048; *Vanegas*, 2023 WL 5663259; so too here.

## CONCLUSION

For the reasons above, this Court should grant permission to appeal the district court's March 25, 2024 order, as certified by the district court on May 10, 2024.

Dated: May 20, 2024                    Respectfully submitted,

Joseph J. Torres                          Yaakov M. Roth
Andrianna D. Kastanek             JONES DAY
JENNER & BLOCK LLP                51 Louisiana Ave. NW
353 N. Clark Street                     Washington, DC  20001
Chicago, IL 60654                       (202) 879-3939
(312) 222-9350                            yroth@jonesday.com
jtorres@jenner.com
akastanek@jenner.com            James R. Saywell
                                               JONES DAY
                                               901 Lakeside Ave. East
                                               Cleveland, Ohio 44114
                                               (216) 586-3939
                                               jsaywell@jonesday.com

*Counsel for Petitioners*

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(g), the undersigned counsel certifies that the foregoing document complies with the type-volume limit of Fed. R. App. P. 5(c)(1) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5184 words. The undersigned counsel further certifies that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32(b), and the type-style requirements of Fed. R. App. P. 32(a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Book Antiqua font.

Dated: May 20, 2024                     /s/ Yaakov M. Roth
                                        Yaakov M. Roth

                                        *Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2024, the foregoing document and its exhibits were electronically filed with the Clerk of the Court of the U.S. Court of Appeals for the Seventh Circuit by email submission.  A copy of this filing will be served on the counsel for Respondents below via United Parcel Service overnight delivery and electronic mail:

Harold L. Lichten
Thomas Fowler
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
tfowler@llrlaw.com

Jeffrey A. Macey
MACEY SWANSON LLP
429 N. Pennsylvania Street, Suite 204
Indianapolis, IN 46204
(317) 637-2345
jmacey@MaceyLaw.com


Dated: May 20, 2024                    /s/ Yaakov M. Roth
                                       Yaakov M. Roth

                                       *Counsel for Petitioners*

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| MONICA RICHARDS individually and on behalf of all other similarly situated individuals, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:23-cv-00242-TWP-MKK |
| ELI LILLY & COMPANY, LILLY USA, LLC, | ) ) ) | |
| Defendants. | ) ) | |

**ORDER ON PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION AND DEFENDANTS' MOTION TO STRIKE**

This matter is before the Court on Plaintiff Monica Richards' ("Richards") Motion for Conditional Certification and Issuance of Notice and Opt-In Form (Filing No. 41). Richards initiated this action individually and on behalf of others similarly situated, against Defendants Eli Lilly & Company and Lilly USA, LLC ("Lilly USA") (collectively "Eli Lilly" or "Defendants"), alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Massachusetts Anti-Discrimination Law, G.L. c. 151B § 4(1B) (Filing No. 1). Richards seeks to bring the ADEA claim as a collective action under 29 U.S.C. §§ 216(b), 626(b). Also before the Court is Defendants' Motion to Strike Opt-In and Consent Form (Filing No. 58). For the reasons set forth below, both motions are **granted**.

## I.  BACKGROUND

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Aggrieved employees may enforce the ADEA through certain provisions of the Fair

Labor Standards Act of 1938 ("FLSA"), and the ADEA specifically incorporates § 16(b) of the

FLSA, 29 U.S.C. § 216(b).  *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 67–68 (2000).

Richards is a fifty-three (53) years old woman who has worked for Eli Lilly since August

1, 2016. (Filing No. 1, ¶ 3). She alleges that,

> Since at least 2017, Eli Lilly has been engaged in a companywide effort to shift its
> personnel focus to Millennials at the detriment of older employees, openly
> espousing an aggressive strategy of hiring and retaining Millennial employees. As
> a part of its effort to retain Millennial workers, Eli Lilly has created resource groups
> for younger employees who it calls "Early Career Professionals" and has
> systematically favored younger employees by giving them promotions to the
> exclusion of older employees who are equally or better qualified.

*Id*. ¶ 10. Richards contends that Eli Lilly both knowingly and willfully denied promotions

systematically to qualified employees who were older than forty, including herself and all other

similarly situated employees, and she alleges Eli Lilly's discriminatory preferences for younger,

Millennial employees has been well documented. Id. at *Id*. ¶ 11.

Richards seeks conditional certification of a collective action, which would permit court-

authorized notices to be sent to potential opt-in plaintiffs.  Her proposal for her collective action

consists of: "All Eli Lilly employees[1] who were 40 or older when they were denied promotions

for which they were qualified, since February 12, 2022."  (Filing No. 41 at 1.)

Opposing certification, Defendants argue Richards does not demonstrate she is "similarly

situated" to other members of the proposed collective because she does not point to another specific

employee who qualifies for the proposed collective, nor identify a common policy or plan that

impacted such employees (Filing No. 45 at 12).  Defendants further argue the more lenient "modest

showing" standard on which Richards relies is not required by statute or Seventh Circuit case law

---

[1] Defendants and the Court understand the sought class to include Lilly USA employees, not just those of Eli Lilly
(*see, e.g.*, Filing No. 45 at 7).

and that she fails to carry her burden under the more demanding "preponderance of the evidence" standard that Defendants seek to apply.  *Id.* at 12, 19–33.

## II. <u>DISCUSSION</u>

Richards alleges Eli Lilly engaged in rampant age discrimination by systematically denying promotions to her and qualified employees who are older than 40, while disproportionately promoting younger employees, in violation of the ADEA.  She asks the Court to conditionally certify a collective action.  Richards points out, that "[u]nder the ADEA (like the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA")), employees who wish to participate in a collective action challenging age discrimination may do so by affirmatively "opting in" to join the lawsuit."  (Filing No. 42 at 3.)

The Seventh Circuit has not identified a specific standard for certifying a collective action under the FLSA.  *Iannotti v. Wood Grp. Mustang*, 603 F. Supp. 3d 649, 653 (S.D. Ill. 2022).  Richards' motion is styled as a motion for "conditional" collective certification because many courts in this Circuit have traditionally applied an *ad hoc* two-step certification process "in which the first step is merely preliminary."  *Fillipo v. Anthem Companies, Inc.*, No. 1:22-cv-926, 2022 WL 18024818, at *1 (S.D. Ind. Dec. 30, 2022) (citing *In re New Albertsons, Inc.*, No. 21-2577, 2021 WL 4028428, at *1 (7th Cir. Sept. 1, 2021) (describing two-step collective certification)); *see, e.g.*, *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 438 (S.D. Ind. 2012); *Owens v. GLH Cap. Enter., Inc.*, No. 3:16-cv-1109, 2017 WL 2985600, at *1 (S.D. Ill. July 13, 2017) (citing *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008) (collecting cases)).

Defendants correctly observe (*see* Filing No. 45 at 24–25) that the two-step process is not statutorily mandated, *see* 29 U.S.C. § 216(b), nor required by the Seventh Circuit.  *See Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 n.5 (7th Cir. 2020).  District courts throughout this Circuit, entrusted with "wide discretion" in managing collective actions, *New Albertsons*, 2021 WL

3

4028428 at *2 (quoting *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010)), have nevertheless commonly employed the two-step process. *See id.* at *1; *Duan*, 2023 WL 5955911, at *1.

At the first step — the only step relevant here — the plaintiff need only make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Duan v. MX Pan Inc.*, 2023 WL 5955911, at *1 (S.D. Ind. Aug. 21, 2023) (quoting *New Albertsons*, 2021 WL 4028428 at *1). If the plaintiff meets this standard, the court may conditionally certify the suit as a collective action and allow the plaintiff to send notice of the case to similarly situated employees who may then opt-in as plaintiffs. *Id.*

Importantly, at step one, the court is not required "to make any findings of fact with respect to contradictory evidence presented by the parties nor does th[e] court need to make any credibility determinations with respect to the evidence presented." *Berndt v. Cleary Bldg. Corp.*, No. 11-cv-791, 2013 WL 3287599, at *7 (W.D. Wis. Jan. 25, 2013) (quoting *Severtson v. Phillips Beverage Co.*, 141 F.R.D. 276, 278–79 (D. Minn. 1992)). "Therefore, where the parties' evidentiary submissions directly conflict, they will be resolved — for purposes of this order only — in plaintiffs' favor." *Id.* (citing *Larsen v. Clearchoice Mobility, Inc.*, No. 11 C 1701, 2011 WL 3047484, at *1 (N.D. Ill. Jul. 25, 2011)). In exercising discretion, district courts must "respect judicial neutrality and avoid even the appearance of endorsing the action's merits." *Bigger*, 947 F.3d at 1046.

At the more stringent second step following discovery, the court reevaluates the conditional certification and "determine[s] whether there is sufficient similarity between the named and opt-in plaintiffs." *Duan*, 2023 WL 5955911, at *1. "If there is sufficient similarity, . . . the matter

[may] proceed to trial on a collective basis; if there is not, the court may revoke conditional certification or divide the class into subclasses." *Id*.

Defendants contest the "modest factual showing" standard at this stage and urge the Court to instead apply the "preponderance of the evidence" standard "given the dangers posed by collective actions in exerting undue pressure on defendants to settle." (Filing No. 45 at 26.) Defendants point to the decision in *Bigger* and argue "trial courts must 'shield against abuse of the collective action device' by assessing certification under familiar evidentiary standards." *Id.* at 28 (quoting 947 F.3d at 1050).

*Bigger* addressed, as a matter of first impression, a defendant's opposition to the issuance of notice to individuals who allegedly entered mutual arbitration agreements that waived the right to join any collective action. *See* 947 F.3d at 1047, 1049. The Seventh Circuit held that an overseeing court may authorize notice to such individuals "unless (1) no plaintiff contests the existence or validity of the alleged arbitration agreements, or (2) after the court allows discovery on the alleged agreements' existence and validity, the defendant establishes by a *preponderance of the evidence* the existence of a valid arbitration agreement for each employee it seeks to exclude from receiving notice." *Id.* at 1047 (emphasis added).

This Court is not persuaded that the *Bigger* decision imposes a "preponderance of the evidence" standard on *any party besides* an "employer seeking to exclude employees from receiving notice" and to demonstrate "the existence of a valid arbitration agreement." *Id.* at 1050. No other decision from this court cites *Bigger* for such a proposition, even in cases involving arbitration agreements and invoking its analytic framework. *See, e.g.*, *Rodgers-Rouzier v. Am. Queen Steamboat Operating Co.*, LLC, 2022 WL 823697, at *2–*3 (S.D. Ind. Mar. 18, 2022).

The Court declines Defendants' invitation to apply the Fifth Circuit's framework in *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430 (5th Cir. 2021), or the Sixth Circuit's more recently established version in *Clark v. A&L Homecare & Training Center, LLC*, 68 F.4th 1003 (6th Cir. 2023) (*see* Filing No. 45 at 28–29). When presented with the issue, other courts throughout the Seventh Circuit have refused to adopt *Swales* and/or *Clark* and have continued to adhere to the two-step approach. *See, e.g.*, *New Albertsons*, 2021 WL 4028428 at *2 (declining to hold that district court's decision to apply two-stage collective certification framework instead of *Swales*, "was patently erroneous or outside the bounds of judicial discretion"); *O'Neil v. Bloomin' Brands Inc.*, 2023 WL 8802826, at *3 n.2 (N.D. Ill. Dec. 19, 2023) (disagreeing with Defendants' claim that *Swales* and *Clark* show the "tide is shifting away from a two-stage approach to certification"); *Brant v. Schneider Nat'l Inc.*, 2023 WL 4042016, at *2 (E.D. Wis. May 4, 2023) (declining invitation to depart from the two-step process), *reconsideration denied*, 2024 WL 218416 (E.D. Wis. Jan. 19, 2024); *McColley v. Casey's Gen. Stores, Inc.*, 559 F. Supp. 3d 771, 776, 2021 WL 1207564 (N.D. Ind. 2021) ("The FLSA certification two-step remains the dance of this circuit — as least for the time being — and the court adheres to it."). In the absence of a Seventh Circuit case overruling this long-applied approach, the Court finds no reason to depart from it and now turns to the issue of whether the potential plaintiffs are "similarly situated" for purposes of conditionally certifying the collective action.

**A.     Richards' Evidentiary Support**

To support her allegations that Defendants systematically denied promotions to qualified employees who were older than forty and disproportionately promoted younger employees over older workers, Richards submits an affidavit (Filing No. 42-4), as well as those of one former employee Christina Sosa ("Sosa") (Filing No. 42-6), and one current Eli Lilly employee, Herold Oluoch ("Oluoch") Filing No. 42-5), asserting they had similar experiences (*see* Filing No. 42 at

10).  She also provides an affidavit of an Eli Lilly executive business manager James Sweeney ("Sweeney") (Filing No. 42-3) and cites to a pair of prior lawsuits brought before this court (*see* Filing No. 42 at 4–6).  In the first suit, which has been resolved by consent decree, the Equal Employment Opportunity Commission ("EEOC") alleged that Lilly USA failed to hire applicants aged forty and over for Sales Representative positions from April 2017 through December 2021 (*see EEOC v. Lilly USA, LLC*, No. 1:22-cv-01882 (S.D. Ind. Oct. 10, 2023)).  In the second suit, which has been since dismissed with prejudice, Eli Lilly employees brought a class and collective action alleging that Eli Lilly engaged in systematic age discrimination with respect to the hiring practices of Sales Representatives in the Diabetes and Primary Care Business Units (*see Grimes et al. v. Eli Lilly and Co.*, No. 1:21-cv-2367 (S.D. Ind. Oct. 13, 2023)).

### 1.   <u>Similarly Situated Individuals</u>

Defendants first point out that Richards fails to identify a single specific employee who is similarly situated to herself (Filing No. 45 at 10).  They assert that the former Lilly employee, Sosa, left before the start of the collective period and the current employee, and Oluoch "does not claim that he ever actually *sought and was denied* a promotion."  *Id.* at 11 (emphasis in original).

Sosa's affidavit describes a "shift" in treatment in 2020 and her subsequent constructive discharge, which occurred in November 2021 (*see* Filing No. 42-6, ¶¶ 6–10).  Upon review, the Court finds that, although the potential collective action class cannot include Sosa, her affidavit supports Richards' underlying argument about Eli Lilly's alleged common policy or plan involving age discrimination.  The actions therein — of a younger Eli Lilly employee with lower sales numbers receiving promotion support unoffered to the older employee affiant — are consistent with the complaint and helpfully illustrate circumstances similar to those experienced by Richards.

Defendants' arguments about the current employee, Oluoch, and his unsuccessful promotions are likewise unpersuasive and inappropriate at this step.  His affidavit describes five

internal promotion slots opened annually to department employees (Filing No. 42-5, ¶ 3).  In 2017, Oluoch started noticing "much younger employees . . . being promoted over [him] and at much higher rates."  *Id.* ¶ 4.  He clearly asserts Eli Lilly "passed [him] over for a promotion in favor of an [Early Career Professional ("ECP")] at least eight times" and that he reported the alleged age discrimination to Human Resources in 2022.  *Id.*, ¶¶ 6, 7.  The Court finds this to be sufficiently supportive of Richards' theory that Defendants attempted in the relevant time periods to retain Millennial workers "by promoting them over" older counterparts (Filing No. 1, ¶ 1), who were "passed over for promotion."  *Id.*, ¶ 23.

Although Defendants make their own substantial allegations (supported by exhibits and declarations), including that Oluoch "did not apply to any open job postings" from February 12, 2022, onward (Filing No. 45-8, ¶ 8), at this initial notice stage of the proceedings, the Court does "not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant."  *Prater v. All. Coal, LLC*, 2022 WL 22285581, at *2 (S.D. Ind. Mar. 22, 2022) (quoting *Nicks v. Koch Meat Co.*, 265 F. Supp. 3d 841, 849 (N.D. Ill. 2017) (St. Eve, J.)).  Reliance on defendant declarations is largely misplaced when the court analyzes certification under step one.  *See Briggs v. PNC Fin. Servs. Grp.*, 2016 WL 1043429, at *6 (N.D. Ill Mar. 16, 2016) (defendant's declarations "are futile in the Court's step one analysis"); *Salmans v. Byron Udell & Assocs.*, 2013 WL 707992, at *4 (N. D Ill. Feb. 26, 2013) ("[W]hether … discrepancies [between potential class members] will become important down the road does not affect the current question of conditional certification.") (citation omitted).  Challenging the factual merits of the collective action in such a manner is properly addressed at the second certification step, when Defendants' opportunity to decertify the collective action will occur.

Defendants nevertheless maintains Richards' evidence regarding similarly situated individuals is conclusory and speculative. While ultimately the evidence may show this to be true, it is sufficient at this step that Richards merely shows "some factual nexus" that connects her to "other potential plaintiffs" as "victims of an unlawful practice." *Berndt v. Cleary Bldg. Corp.*, No. 11-cv-791, 2013 WL 3287599, at *6 (W.D. Wis. Jan. 25, 2013). The Court finds Richards has succeeded in doing so.

Throughout her motion and reply, Richards draws heavily upon the expertise of Eli Lilly executive business manager, Sweeney, who, for the preceding twenty-two years, has assisted in the hiring, recruitment, and development of sales team members and attended numerous executive level recruitment and hiring meetings (*e.g.*, Filing No. 42 at 6–8; Filing No. 49 at 17–18; *see also* Filing No. 42-3, ¶ 1). Sweeney's detailed affidavit provides the necessary "factual nexus" connecting Richards to other potential plaintiffs.

Being "very familiar with Eli Lilly's recruitment *and promotion* practices," Sweeney described a company departure from strict promotion requirements in favor of an "early identified talent" pilot program, which allowed managers "to bypass the competency model and promote new employees with minimal or no experience" (Filing No. 42-3, ¶¶ 1–3) (emphasis added). This departure started in or around 2012 and "gained momentum" over the next few years. *Id.*, ¶ 3.

He explained biannual human resource planning meetings and that he witnessed how senior Eli Lilly employees with hiring and promotional authority would "discredit and undermine" the work of older employees being considered for promotions. *Id.*, ¶ 10. Older employees he supervised "often were singled out for criticism," even when he could attest to their excellent performance, but younger and newer sales representatives "who [we]re not ready for promotions" were often promoted. *Id.*

Sweeney's affidavit provides the specific example of a salesperson in their fifties whom he personally supervised.  Although the salesperson's identity is left undisclosed, the affidavit details what happened when Sweeney recommended him for a stock grant, which is often considered a "precursor[] to promotion[]."  *Id.*  One Sales Director (who subsequently became an Associate Vice President) shot down the recommendation, called the salesperson lazy, and represented "he had not performed to his maximum potential" "without having any firsthand knowledge about his performance or work."  *Id.*  The director never observed him work nor cited any specific metrics in this evaluation.

From this context, Sweeney indicates he is aware of at least twenty employees over the age of forty "who are qualified for more senior sales representative roles, have expressed interest in being promoted, and have not been promoted."  *Id.* at 6.  Given the totality of Richards' other proffered evidence, including the sweeping picture painted by Sweeney's statements, it would be at least reasonable to infer that these twenty individuals, personally known to him, suffered the same or similar plight ("similarly situated") as Richards, Sosa, Oluoch, or the salesperson Sweeney supervised.  That is to say, some plan, policy or instruction linked Millennial employees to promotions that these twenty or so older, more qualified individuals had "expressed interest" in and, as an ultimate result, they were "not . . . promoted."  *Id.* at 6.  Adjudging the accompanying theories and specifics of *how* that happened (or did not happen) is more proper at the second decertification step. As noted earlier, the Court need not determine at this step whether, in practice, the common plan, policy, or instruction played out over "perfunctory interview[s]" ([Filing No. 42-4 at 4](#)), like in Richards' case, or unsubstantiated negative exchanges dissecting older employees' performance, like in the salesperson's case.  This occurs at the more stringent second step.  *See Duan*, 2023 WL 5955911, at *1.

### 2. **Common Policy or Plan Impacting Such Individuals**

Defendants next argue that Richards identifies no evidence regarding a common or single plan of discriminatory promotions (Filing No. 45 at 16). They maintain that Eli Lilly's organizational structure and discretionary policies used in evaluating employees for promotion, and Richards' supporting affidavits do not establish a common thread linking the broad collective.

Defendants argue that Richards attempts "to identify such a common plan by discussing the ECP initiative" and does not provide any specific facts to the contrary. *Id.* In discussing "the ECP initiative", Defendants provide evidence in the form of a declaration by an Eli Lilly senior vice president, Matthew "Kip" Chase. *See id.* (discussing Filing No. 45-1). The exhibits attached to the declaration include an internal website page describing job paths and job levels (Filing No. 45-2), an excerpt of an April 2017 "People Strategy" presentation used during the 2017 town hall meeting referenced in the collective action complaint (Filing No. 45-5), and a corresponding "Pre-Read" distributed in advance of the meeting to human resources personnel (Filing No. 45-6). In essence, Defendants argue that the 2017 ECP initiative mentioned in the complaint could not have served as the common plan, since it "was focused on hiring and advancement for entry-level positions, not manager-level positions" like Richards' (Filing No. 45 at 16; *see also* Filing No. 45-1, ¶¶ 22, 24), and had its last hiring goal set in fiscal year 2020 (Filing No. 45 at 16–17; *see also* Filing No. 45-1, ¶ 25).

Ignoring for a moment the fact that the Court does not make merits determinations, weigh evidence, or specifically consider opposing evidence at this stage, *Prater*, 2022 WL 22285581, at *2, the Court finds that this evidence, introduced by Defendants, seems to imply that the April 2017 presentation, and associated ECP *hiring* initiative which ensued, constitutes — full stop — the entirety of the alleged "companywide age bias" that Richards seeks to put forth in this proposed collective. But Richards does not pursue such a limited collective action.

Rather, in the Complaint itself, as well as in the motion and reply, Richards makes substantial allegations, supported by detailed affidavits, that putative class members were together victims of a policy or plan that "extended *beyond* the discriminatory hiring practices detailed in the *EEOC* and *Grimes* lawsuits." (Filing No. 1 at 4) (emphasis added). For example, Sweeney describes learning that a certain Sales Director (the same one involved in the previous salesperson incident) "was following a directive from senior Elil Lilly leadership, including [the] CEO . . . and Senior Vice President of Human Resources and Diversity . . . , to hire *and promote* Early Career Professionals." (Filing No. 42-3 at 4) (emphasis added). He continues: "[P]romoting Early Career Professionals even became part of our performance planning objectives." *Id.* Sweeney straightforwardly assesses that, despite "claim[ing] to have a standardized hiring and promotion process," "the company ignores this process when it comes to both hiring and promoting Early Career Professionals, who are advanced quickly through the promotion process" "at the expense of more qualified and older employees." *Id.* at 6.

Richards recounts her own experience and understanding of such policy or plan working for Eli Lilly in Boston, Massachusetts. Among other things, she describes how an individual "in her late 20s" was promoted to the district sales manager position instead of her and was "hired as an S1 or S2 and … promoted to an S6 in just six years" (Filing No. 42-4 at 4, 5). These "rapid promotions deviate sharply from Eli Lilly's professed Human Resource Planning Process and 'competency model' of promotion, which provides that it takes around three years at each 'S' level before being promoted to the next 'S' level . . . ." *Id.* at 5. Finally, as discussed previously, Richards' allegations are supported by affidavits of other individuals — one working in Indianapolis, Indiana and one that worked previously in Florida — that detail individual circumstances similar to those experienced by Richards. These showings together are sufficient

to demonstrate the existence of a "factual nexus" connecting "victims of an unlawful practice."
*Berndt*, 2013 WL 3287599, at *6.

The Court is not dissuaded by Defendants' insistence that Richards', Oluoch's, and Sosa's circumstances are individualized occurrences. This would be to miss the forest for the trees. Instead of undermining Richards' claim, the differences to which Defendants point (geographic area, supervisors, and promotion evaluators) are details whose widespread variety might support the allegations of an overarching — *i.e.*, "companywide" (Filing No. 1 at 3) — plan, threading together instances of age bias in promotion.

Defendants' arguments concerning the complexity of Eli Lilly's organizational structure and the variance in discretionary policies used in evaluating employees for promotion are likewise unavailing at this step. Richards alleges a common policy or plan of willfully promoting younger, less qualified employees over older, more qualified employees. It is therefore the disadvantaged employees' age, qualifications with regard to the relevant promotion, and status of being passed over in favor of a younger and less qualified counterpart — and not *per se* their job functions, or core business unit to which they belong, or the hiring criteria applied to the sought-after position — that bind the proposed collective of employees. While Defendants may disagree as to the relevance of the alleged variation in Eli Lilly hierarchy, the Court may not engage in making merit determinations or weighing evidence at this stage, and therefore does not find the potential differences between collective members to be disqualifying for purposes of authorizing notice. *See Prater*, 2022 WL 22285581, at *2–3. Should further discovery reveal that some or all potential plaintiffs are not in fact similarly situated or subject to a single common plan of discriminatory promotions, then decertification may be appropriate.

All told, Richards has made a "modest factual showing" that she and potential plaintiffs "together were victims of a common policy or plan that violated the law." *In re New Albertsons, Inc.*, 2021 WL 4028428, at *1. Therefore, the Court conditionally certifies this action.

**B.    Proposed Notice**

After conditionally certifying a collective action, the court may, at its discretion, authorize notice to similarly situated employees. *Horta v. Indy Transp., Inc.*, No. 1:20-cv-02659, 2021 WL 1667078, at *3 (S.D. Ind. Apr. 28, 2021). In doing so, the court maintains a "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Jirak*, 566 F. Supp. 2d at 850 (quoting *Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170–71 (1989)).

Richards seeks leave to send the Notice and Opt-In Consent Forms by text, e-mail, and U.S. Mail (*see* Filing No. 42 at 22). She also seeks a ninety-day opt-in period with a mail and email reminder sent within forty-five days of the first notice. *See id.* at 22–23. To accomplish this notice plan, Richards asks the Court to require Defendants to produce, within ten days from the date of the order, a collective list for "all former and current Eli Lilly employees[] who have worked for any period of time since February 12, 2022, to the present" (*see* Filing No. 41) to Richards' counsel.

Casting the net as wide as requested ("all former and current" employees) fails to preserve Eli Lilly's privacy interests by requiring Defendants to relinquish the information of employees who are ineligible to become opt-in plaintiffs. To match the certified collective more properly, the Court limits the requested information that Eli Lilly is mandated to turn over to Richards to "all former and current Eli Lilly employees who have worked for any period of time since February 12, 2022, to the present *and were forty years of age or older when they were denied promotion*."

Defendants further seek modifications to the notice and consent forms and have submitted redline versions of each. Specifically, Defendants argue the forms should: (1) define the collective

14

and use congruent criteria to describe opt-in plaintiffs; (2) explain Eli Lilly can seek

decertification, which may result in the dismissal, and that opt-in plaintiffs are thus only potentially

members of any ultimate collective; (3) reference Richards' claims and Eli Lilly's defenses in a

more prominent paragraph disclaiming that the case is at an early stage; (4) advise potential opt-

ins that they may be required not only to provide evidence, but respond to discovery and testify at

trial; (5) inform potential opt-ins that they may share in liability for Eli Lilly's costs if Eli Lilly

prevails; and (6) inform potential opt-ins that they may contact Richards' counsel or an attorney of

their choice (Filing No. 45 at 32–33).

The Court agrees with some, but not all, of Defendants' proposed modifications.  First,

Richards does not object specifically to Defendants' request that the forms define the collective

and use congruent criteria to describe opt-in plaintiffs.  Without modification, the notice form in

particular would appear to apply to *any* employees over the age of forty considered for a

promotion, regardless of whether they were denied, or unqualified for, those same promotions.

Since the certified collective consists by its own terms of those employees over forty who were

*denied* promotions *for which they were qualified*, Defendants' modifications to the forms are

**granted** to the extent that they incorporate the missing necessary elements.  Considering these

changes, the sentence in the notice now reads in relevant part: "According to the company's

records, you were forty (40) years of age or older and were denied a promotion for which you were

qualified on or after February 12, 2022, and are therefore eligible to . . . ."

**C.**     **Defendants Motion to Strike Opt-In and Consent Form**

Even with Defendants' proposed modification, the language in the consent form does not

match the collective's breadth.  After briefing the motion for conditional certification, Richards

filed a "notice of consent to opt-in" to the claims in the case (*see* Filing No. 56; Filing No. 56-1),

which is the subject of Defendants' Motion to Strike.  In relevant part, the consent, signed by affiant

Sweeney, removes the statements that the undersigned "applied for a promotion at Eli Lilly" and Eli Lilly denied the application, both of which were found in the previous consent form (*see* Filing No. 42-2).  In lieu of these indications, Sweeney's consent form instead states he was "passed over for a promotion by Eli Lilly in favor of a younger employee in approximately" October 2022 (Filing No. 56-1).  The added language, which parallels that found in Oluoch's affidavit, squarely fits within a theory of the case promoted by Richards (*see* Filing No. 1, ¶¶ 1, 23).  For such reasons, and taking into account the collective which the Court has certified above, the Court finds that the altered language in Sweeney's consent fulfills 29 U.S.C. § 216(b)'s requirement that any party plaintiff shall "give[] consent in writing to become [] a party."

Considering such observations, as well as the proposed modifications which assist in determining the relevant timeline, the consent form to be sent to opt-in plaintiffs is changed to now read in relevant part:

> On or about _____ (month/date), I applied or was considered for a promotion at Eli Lilly.  Eli Lilly denied my application or passed me over for a promotion in favor of a younger employee on _____ (month/date).  At the time I applied for the promotion, I was a _____ (title, role, division).  At the time my application was denied or I was passed over for promotion, I was _____ years old.  The promotion(s) I had applied to/did not receive was to the position(s) of _____ (title(s), role(s), division(s)).  I believe I was qualified for the role and was passed over for a less qualified, younger applicant.

In light of these and other changes, the Court **grants** Defendants' Motion to Strike (Filing No. 58), Sweeney's consent form (Filing No. 56-1), but Richards is **granted leave** to file an amended consent form for Sweeney that is consistent with this Entry.

Next, when it comes to Defendants' proposed modification concerning Eli Lilly's possible decertification and effect on opt-in plaintiffs, the Court finds the addition of such an explanation unnecessary.  At present, a prominent paragraph indicates that the case "is at an early stage" and there has not been a decision on the merits or settlement (Filing No. 42-1 at 2).  Later on, it is further

explained that opt-in plaintiffs "will be bound by any ruling or settlement in this case." *Id.* Together, these disclaimers satisfactorily place potential plaintiffs on notice that they will be bound by rulings to come at later stages. The Court finds that spelling out the possibilities or effects therein as stated in the second paragraph of Exhibit 6 is appropriate. (*See* Filing No. 45-11 at 2).

The Court finds Defendants' request that the proposed notice include language regarding the potential consequences of joining the case and the prospect of participation in discovery and at trial to be a fair suggestion. *See Knox v. Jones Grp.*, 208 F. Supp.3d 954, 966 (S.D. Ind. 2016) ("Plaintiffs' notice . . . is approved with the addition of a phrase that 'a class member may be subject to obligations such as responding to discovery, giving a deposition, and testifying at trial' in the 'What happens if I join the lawsuit?' section."), *on reconsideration in part*, 2016 WL 6083526 (S.D. Ind. Oct. 18, 2016); *see also Carrel v. MedPro Grp., Inc.*, 2017 WL 1488359, at *11 (N.D. Ind. Apr. 26, 2017) ("However, the class members may be subject to discovery, including depositions, to determine their individualized damages. Accordingly, revisions to include reference in the Notice to this impeding discovery are warranted.").

Richards should also acknowledge the consequences of an unfavorable result. *See Hayes v. Thor Motor Coach, Inc.*, 502 F. Supp. 3d 1342, 1353, 2020 WL 5217388 (N.D. Ind. 2020). Although § 216(b) is silent regarding the court's authority when the defendant is the prevailing party, at least one circuit court has held that the statute does not prevent prevailing defendants from seeking an award of costs under Federal Rule of Civil Procedure 54(d). *See Lochridge v. Lindsey Mgmt. Co.*, 824 F.3d 780, 782–83 (8th Cir. 2016); *see also E.E.O.C. v. O & G Spring & Wire Forms Specialty Co.*, 38 F.3d 872, 883 (7th Cir. 1994) ("Congress must be presumed to know, upon incorporating the FLSA into the ADEA, that in the absence of a specific provision, prevailing defendants would not be able to recover fees absent a showing of bad faith. By explicitly changing

17

this rule with respect to plaintiffs but remaining silent with respect to defendants, the most sensible

reading is that the FLSA and the ADEA adopt the common law rule with respect to prevailing

defendants."). It only seems prudent to advise future plaintiffs of their responsibilities and

potential consequences if they join, so long as the language does not unfairly dissuade possible

plaintiffs from joining. The Court finds that Defendants' proposed language does not run this risk.

The forms shall be modified accordingly.

Lastly, Defendants request that the opt-out period should be reduced from Richards'

proposed ninety days to sixty days. A period of seventy-five days is a reasonable compromise.

The notice shall be modified accordingly. Defendants further argue the Court should not authorize

reminder notices, which they contend are unnecessary and "could be interpreted as encouragement

by the Court to join the lawsuit" (Filing No. 45 at 33 (quoting *Smallwood v. Ill. Bell Tel. Co.*, 710

F. Supp. 2d 746, 753–54 (N.D. Ill. 2010)). However, such concerns are uncompelling, given that

the second notice will be disseminated by Richards' counsel, not the Court. That aside, since the

individual is not part of the collective in an FLSA action unless he or she opts-in, this court has

previously recognized a second notice or reminder is appropriate. *See, e.g.*, *Slack v. Xcess, Inc.*,

2020 WL 12738895, at *3 (S.D. Ind. July 9, 2020); *Knox*, 208 F. Supp. 3d at 964–65. The Court

therefore authorizes Richards to send a second notice, identical to the first, forty-five days after

the issuance of the first notice to all individuals who have not yet opted-in to this matter.

The Court has considered Defendants' remaining objections, as well as the other suggested

redlined changes, and overrules them. They are largely stylistic suggestions concerning the

language included in the notice or are otherwise unnecessary. The Court will not engage in a

wholesale rewrite of Richards' proposed notice form, as collective action plaintiffs should be

allowed to use the language of their choice in drafting the communication to other prospective

collective members.  *See King v. ITT Continental Baking Co.*, 1986 WL 2628, at *3 (N.D. Ill. Feb. 18, 1986) (Rovner, J.).

## III. <u>CONCLUSION</u>

Richards has met her step one burden to certify her ADEA claims as a conditional collective action under the FLSA.  Her Motion for Conditional Certification and Issuance of Notice and Opt-In Form (Filing No. 41) is **GRANTED**. Eli Lilly's Motion to Strike (Filing No. 58) is **GRANTED,** and **Filing No. 56-1 is stricken**.  Richards is granted leave file a new a consent form for Sweeney that is consistent with this Order.

The notice and opt-in consent forms are limited in accordance with this Order.  Because Richards must revise these forms before they can be sent, the Court **ORDERS** her to **file within fourteen (14) days of the date of this Order supplemental notice and opt-in consent forms**, as well as a **proposed order** granting leave to send them.  Absent any unforeseen issues or unconsidered additions, the Court intends to grant the proposed order and allow notice to proceed. Thus, new objections by Defendants, if any, are not to exceed three pages and are due **seven (7) days after Richards' submission**.

Additionally, the Court **ORDERS** Defendants **to share the requested contact information with Richards' counsel within twenty-one (21) days of the date of this Order** for all former and current Eli Lilly employees who have worked for any period since February 12, 2022, to the present and were forty years of age or older when they were denied promotion.

**SO ORDERED**.

Date:   3/25/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

19

DISTRIBUTION:

Harold Lichten
LICHTEN & LISS-RIORDAN
hlichten@llrlaw.com

Jane Farrell
LICHTEN & LISS-RIORDAN PC
jfarrell@llrlaw.com

Jeffrey A. Macey
MACEY SWANSON LLP
jmacey@maceylaw.com

Matthew Patton
LAW OFFICE OF NICHOLAS F. ORTIZ P.C.
mdp@mass-legal.com

Thomas Fowler
LICHTEN & LISS-RIORDAN, P.C.
tfowler@llrlaw.com

Jacob Wentzel
JENNER & BLOCK LLP
jwentzel@jenner.com

Joanna Wright
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036

Joseph Torres
JENNER & BLOCK LLP
jtorres@jenner.com

Katherine Funderburg
JENNER & BLOCK LLP
kfunderburg@jenner.com

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| MONICA RICHARDS individually and on behalf of all other similarly situated individuals, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:23-cv-00242-TWP-MKK |
| ELI LILLY & COMPANY, LILLY USA, LLC, | ) ) ) | |
| Defendants. | ) ) | |

**ENTRY ON DEFENDANTS' MOTION TO CERTIFY AN IMMEDIATE APPEAL**
**UNDER 28 U.S.C. § 1292(b) AND EMERGENCY MOTION FOR A STAY**

This matter is before the Court on Defendants Eli Lilly & Company and Lilly USA, LLC's (collectively "Eli Lilly" or "Defendants") Motion to Certify an Immediate Appeal under 28 U.S.C. § 1292(b) and Emergency Motion for a Stay (Filing No. 88).  In this lawsuit, Plaintiff Monica Richards ("Richards") alleges Eli Lilly knowingly and willfully denied promotions to qualified employees who were older than forty, including herself and all other similarly situated employees, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Massachusetts Anti-Discrimination Law, G.L. c. 151B § 4(1B) (Filing No. 1).  After the Court granted conditional collective certification under 29 U.S.C. § 216(b) (Filing No. 82), Eli Lilly filed the present motion, asking the Court to certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  For the following reasons, Eli Lilly's motion is **granted**.

## I.   BACKGROUND

Richards, a fifty-three-old woman who has worked for Eli Lilly since August 1, 2016, alleges that,

> [s]ince at least 2017, Eli Lilly has been engaged in a companywide effort to shift its personnel focus to Millennials at the detriment of older employees, openly

espousing an aggressive strategy of hiring and retaining Millennial employees. As a part of its effort to retain Millennial workers, Eli Lilly has created resource groups for younger employees who it calls "Early Career Professionals" and has systematically favored younger employees by giving them promotions to the exclusion of older employees who are equally or better qualified.

([Filing No. 1], ¶ 10).  In her motion for conditional certification, Richards sought collective action status under the ADEA for the following class: "All Eli Lilly employees who were 40 or older when they were denied promotions for which they were qualified, since February 12, 2022." ([Filing No. 41]). Eli Lilly opposed Richards' motion, arguing that she neither demonstrated she was 'similarly situated' to other members of the proposed collective, nor identified a common policy or plan that impacted such employees (*see* [Filing No. 45 at 12]–19).

On March 25, 2024, the Court conditionally certified Richards' proposal for collective action as requested ([Filing No. 82 at 2]).  The Court authorized notice to all former and current Lilly employees who were "forty (40) years of age or older and were denied a promotion for which [they] were qualified on or after February 12, 2022 . . . ." *Id.* at 15.  In doing so, the Court utilized the two-stage certification process that most federal courts apply in FLSA collective actions, pursuant to *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), in contravention of Eli Lilly's urging to instead apply a one-step process that the Fifth Circuit more recently outlined in *Swales v. KLLM Transport Services*, 985 F.3d 430 (5th Cir. 2021), or that crafted by the Sixth Circuit in *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023) (requiring a "strong-likelihood" of similarly situated members before issuing notice).

The Court explained that "many courts in this Circuit have traditionally applied an *ad hoc* two-step certification process" in which the first step is requires "a modest factual showing" and is merely preliminary ([Filing No. 82 at 3], 4 (quoting *Duan v. MX Pan Inc.*, No. 1: 22-cv-02333, 2023 WL 5955911, at *1 (S.D. Ind. Aug. 21, 2023))).

At the more stringent second step following discovery, the court reevaluates the conditional certification after employees have opted in to "determine[] whether there is sufficient similarity between the named and opt-in plaintiffs." *Id.* at 4 (quoting *Duan*, 2023 WL 5955911, at *1). A defendant can thus move to decertify or restrict the class because various putative class members are not 'similarly situated'. *See Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 439 (S.D. Ind. 2012). In ruling on such a motion, courts typically consider the following factors: "(1) whether plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns." *Id.* (quoting *Threatt v. CRF First Choice, Inc.*, No. 1:05cv117, 2006 WL 2054372, at *5 (N.D. Ind. 2006)).

This two-step process stands in opposition to the *Swales* Court's view that "a district court must rigorously scrutinize the realm of 'similarly situated' workers, and must do so from the outset of the case, not after a lenient, step-one 'conditional certification.'" 985 F.3d at 434. "Only then can the district court determine whether the requested opt-in notice will go to those who are actually similar to the named plaintiffs." *Id.*

Seventeen days after the conditional certification order, Eli Lilly asked the Court to certify an interlocutory appeal, which would allow it to petition the Seventh Circuit for review of the following question:

> Whether notice in a collective action can issue based on a modest factual showing of similarity, rather than upon a showing by a preponderance of the evidence that requires the Court to find that commonality across the collective is more likely than not.

(Filing No. 88 at 11). Eli Lilly further requested, on an emergency basis, that the Court stay the then-approaching deadline for providing contact information of Richards' proposed collective and the issuance of notice to those individuals. *Id.* Recognizing that the deadline for providing contact

information was fast approaching, the Court granted the emergency motion and stayed the deadline

to give the parties time to fully brief the Motion to Certify and the Court an opportunity to issue

its ruling on Defendants request for interlocutory appeal. The motion is now fully briefed and ripe

for ruling.

## II. <u>DISCUSSION</u>

Federal appellate jurisdiction is generally limited to review of only the "final decisions of

the district courts." 28 U.S.C. § 1291. Waiting for a final judgment "preserves the proper balance

between trial and appellate courts, minimizes the harassment and delay that would result from

repeated interlocutory appeals, and promotes the efficient administration of justice." *Microsoft*

*Corp. v. Baker*, 582 U.S. 23, 36-37 (2017) (citing *Firestone Tire & Rubber Co. v. Risjord*, 449

U.S. 368, 374 (1981)).

However, 28 U.S.C. § 1292(b) allows for an interlocutory appeal when an order "involves

a controlling question of law as to which there is substantial ground for difference of opinion and

. . . an immediate appeal from the order may materially advance the ultimate termination of

litigation." *Richardson Elecs, Ltd. v. Panache Broad. of Pa., Inc.*, 202 F.3d 957, 958 (7th Cir.

2000). Thus, "[t]here are four statutory criteria for the grant of a section 1292(b) petition to guide

the district court: there must be a question of *law*, it must be *controlling*, it must be *contestable*,

and its resolution must promise to *speed up* the litigation."[1] *Ahrenholz v. Bd. of Trustees of Univ.*

*of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) (emphasis in original). "Unless *all* these criteria are

---

[1] Courts have also upheld a nonstatutory requirement that "the petition must be filed in the district court within a *reasonable time* after the order sought to be appealed." *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) (emphasis in original). The Court does not take issue with the time taken by Eli Lilly in submitting its motion. Though not immediate, the filing of the petition occurred less than three weeks from the March 25, 2024 conditional certification order. Given the breadth of the collective that was conditionally certified and the data collection at hand — which the Court assumes is underway — the Court finds the period reasonable under the circumstances.

4

satisfied, the district court may not and should not certify its order to [the appellate court] for an

immediate appeal under section 1292(b)." *Id.* at 676 (emphasis in original).

Here, all four criteria are met.

### A.   Question of Law?

For purposes of § 1292(b), the term "question of law" generally refers to a

'pure' question of law rather than merely to an issue that might be free from a factual
contest.  The idea was that if a case turned on a pure question of law, something the
court of appeals could decide quickly and cleanly without having to study the
record, the court should be enabled to do so without having to wait till the end of
the case.

*Ahrenholz*, 219 F.3d at 676–77.

The Court disagrees with Richards' concern, to the extent one exists, that a district court's

choice, in the face of the "wide discretion" afforded it, cannot serve as a basis for interlocutory

appeal or present a "pure question of law" (Filing No. 92 at 12 (quoting *Iannotti v. Wood Grp.

Mustang*, 603 F. Supp. 3d 649, 653 (S.D. Ill. 2022), 14).  Richards is correct that district courts are

entrusted with such discretion in managing collective action (*see In re New Albertsons, Inc.*, No.

21-2577, 2021 WL 4028428, at *1 (7th Cir. Sept. 1, 2021)).  And, as Richards argues, challenges

to the adequacy of a plaintiff's evidentiary showing or questions that seek review of the application

of facts to the standards are widely rejected in this Circuit on the grounds that they are not pure

questions of law (*see* Filing No. 92 at 14–15 (quoting among others *Piazza v. New Albertsons,

Inc.*, No. 20-cv-03187, 2021 WL 3645526, at *3 (N.D. Ill. Aug. 16, 2021)).

The Court is assured here, however, that Eli Lilly speaks instead about the 'similarly

situated' standard itself, bypassing altogether the issue of how the Court manages the collective

action *in arriving to* the 'similarly situated' standard, including, for those courts who follow the so-

called two-step *Lusardi* approach, *see* 118 F.R.D. 351 (D.N.J. 1987), the facilitation and issuance

of 'conditional certification' notice.  The question Eli Lilly seeks to present for resolution by the

Seventh Circuit is focused on "a plaintiff's *burden of proof* for establishing that the proposed collective is similarly situated before notice may issue" (Filing No. 94 at 8) (emphasis in original).

As such, the determination of whether *Lusardi* or *Swales* (or even *Clark*) should control whether a court certifies a collective presents a purely legal question that would not require wading into the record for the answer. Eli Lilly simply seeks clarity on the proper legal standard for collective certification, not whether the Court appropriately applied the facts to a particular standard. The Seventh Circuit should be given the opportunity to clarify the standard, should it so choose. After all, both *Swales* and *Clark* were decisions from interlocutory appeals.

**B.   Controlling?**

A question of law is "controlling" for purposes of § 1292(b) if its "resolution is quite likely to affect the further course of the litigation, even if not certain to do so." *In re Ocwen Fed. Bank FSB Mortg. Servicing Litig.*, 04 CV 2714, MDL No. 1604, 2006 WL 1371458 at *2 (N.D. Ill. May 16, 2006) (citing *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996)). Furthermore, "the resolution of an issue need not necessarily terminate an action in order to be 'controlling'." *Knauf Insulation, LLC v. Johns Manville Corp.*, No. 1:15-cv-00111, 2020 WL 4261814, at *5 (S.D. Ind. July 24, 2020) (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990)). "'Controlling' is to be interpreted and applied with flexibility, such that a question is 'controlling' if it is 'serious to the conduct of the litigation, either practically or legally.'" *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 212 F. Supp. 2d 903, 911 (S.D. Ind. 2002) (quoting *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991)).

Even if the interlocutory question has the possibility of not terminating the litigation as a legal matter, application of a standard more rigorous than the one previously applied by this Court would certainly affect as a practical matter the scope of the notice and the size of the collective. *See, e.g.*, *Swales v. KLLM Transp. Servs., LLC*, 410 F. Supp. 3d 786, 794 (S.D. Miss. 2019)

6

("[A]pplying a different test for conditional certification — or for the ultimate decision whether to certify — could materially impact the trial of this matter; the case will either be a collective action or involve individual claims."), *vacated and remanded sub nom. Swales*, 985 F.3d 430.  This would in turn increase settlement leverage, *see Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 (7th Cir. 2020) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989)), that could then "exert 'formidable settlement pressure'" on a defendant.  *Thomas v. Maximus, Inc.*, No. 3:21cv498, 2022 WL 1482008, at *4 (E.D. Va. May 10, 2022) (quoting *Holder v. A&L Home Care and Training Ctr., LLC*, 552 F. Supp. 3d 731, 747 (S.D. Ohio 2021), *vacated and remanded sub nom. Clark*, 68 F.4th 1003).  The offramp of later decertification is certainly possible.  But it would occur after inviting the conditional class to grow.  Thus, at this stage, resolution of the interlocutory question on appeal is "likely to affect the further course of the litigation," *Sokaogon*, 86 F.3d at 659, notwithstanding the certification's conditionality.

### C.  **Contestable Question of law?**

The "contestable" criterion turns on whether "substantial grounds for a difference of opinion" on the issue exist.  *Ormond v. Anthem, Inc.*, No. 1:05-cv-1908, 2011 WL 3881042, at *3 (S.D. Ind. Sept. 2, 2011) (quoting *Sandifer v. U.S. Steel Corp.*, 2010 WL 61971, at *4 (N.D. Ind. Jan.5, 2010)).  The mere presence of a disputed issue that is a question of first impression for the Seventh Circuit, by itself, is insufficient to demonstrate a substantial ground for difference of opinion.  *See Manitowoc Cranes LLC v. Sany Am. Inc.*, No. 13-C-677, 15-C-647, 2018 WL 582334, at *2 (E.D. Wis. Jan. 29, 2018).  Rather, it is the duty of the district court to analyze "'the strength of the arguments in opposition to the challenged ruling,' which process includes 'examining whether other courts have adopted conflicting positions regarding the issue of law proposed for certification.'"  *Whipkey v. Eli Lilly and Co.*, No. 1:20-cv-00450, 2021 WL 11963021,

at *2 (S.D. Ind. Mar. 16, 2021) (quoting *United States v. Select Med. Corp.*, No. 3:12-cv-00051, 2017 WL 468276, at *3 (S.D. Ind. Feb. 3, 2017)).

The question of the correct standard to apply when issuing notice to a proposed FLSA collective has generated sufficient controversy to justify certification. Indeed, the Fifth and Sixth Circuits took up the issue of collective certification on interlocutory appeals, and the pair of opinions demonstrates the substantial and ripe ground for difference of opinion percolating in those circuits alone. *Compare Swales*, 985 F.3d at 442–43 (prescribing district courts consider all available evidence in the "rigorous[] enforce[ment]" of the 'similarly situated' mandate), *with Clark*, 68 F.4th at 1010–11 (6th Cir. 2023) (declining to require a "conclusive finding of 'similar situations'" and remanding for the district court to redetermine certification under a "strong-likelihood standard") (quoting *Sperling v. Hoffmann-La Roche*, 118 F.R.D. 392, 406 (D.N.J. 1988)).

Equally important, the Seventh Circuit has yet to address this specific question, and there are decisions within this circuit that lend support to both parties' positions about the proper level of scrutiny to be applied before issuing notice. *Compare Fillipo v. Anthem Companies, Inc.*, 2022 WL 18024818, at *2 (S.D. Ind. Dec. 30, 2022) (citing in part *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013)) ("To determine whether the proposed collective is 'similarly situated,' the Court may apply the law of Rule 23 class certification."), *with Piazza v. New Albertsons, LP*, No. 20-cv-03187, 2021 WL 365771 (N.D. Ill. Feb. 3, 2021) (quoting *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 855–56 (N.D. Ill. 2013) ("Conditional certification is not the time to 'weigh evidence, determine credibility, or specifically consider opposing evidence presented by a Defendant' . . . ."). At least one court in this Circuit has "inkled the use of a preponderance standard" and

> bemoaned the 'modest' and 'modest plus' concepts — as they are unmoored from
> the statute, unhinged from any recognized or defined standard for assessing
> evidence, foreign from what federal courts seem to be really doing, and ostensibly
> divorced from the goals of enforcement and efficiency that must be promoted ever
> mindful of the parallel risks to neutrality and case leverage in FLSA conditional
> certification cases.

*Fitzgerald v. Forest River Mfg. LLC*, 2022 WL 558336, at *4 (N.D. Ind. Feb. 23, 2022).

In short, "[j]ust because the 'FLSA certification two-step remains the dance of this circuit' does not answer the question what scrutiny should apply . . . at conditional certification [] and how the court should precisely define that scrutiny," *id.*, nor does it nullify the difference of opinion starting to appear in this and other circuits in recognition that the FLSA's text does not require a certain standard of similarity in collective certification.  *See Smith v. United States*, 163 Fed. Cl. 155, 165 (Fed. Cl. 2022) ("Other than the 'similarly situated' requirement, the FLSA does not define a mechanism or any other conditions for certification — nor does it define 'similarly situated.'"); *see, e.g.*, *Mathews v. USA Today Sports Media Grp., LLC*, 2023 WL 3676795, at *3 (E.D. Va. Apr. 14, 2023) (rejecting the *Lusardi* framework in favor of the *Swales* approach and holding that the FLSA's text permits limited discovery "targeted only at the factual and legal considerations needed to make the 'similarly situated' determination," which courts "must determine, at the outset").

Weighing Eli Lilly's arguments in opposition to this Court's grant of conditional certification, and in light of the well-reasoned decisions in *Swales* and *Clark* and the burgeoning adoption in several circuits of positions conflicting with the "modest" showing customarily utilized in the *ad hoc* approach, the Court finds that a substantial ground for difference of opinion exists.

### D.  <u>Materially Advance Termination of Litigation?</u>

Once it is determined that the appeal presents a controlling question of law on which there is a substantial ground for a difference of opinion, "all that section 1292(b) requires as a

precondition to an interlocutory appeal . . . is that an immediate appeal *may* materially advance the ultimate termination of the litigation." *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) (emphasis in original).  "[N]either the statutory language nor the case law requires that if the interlocutory appeal should be decided in favor of the appellant the litigation will end then and there, with no further proceedings in the district court." *Id.* (citations omitted).  "What is required, however, is that an immediate appeal will expedite rather than protract the resolution of the case." *Consumer Fin. Prot. Bureau v. TransUnion*, 674 F. Supp. 3d 467, 471 (N.D. Ill. 2023) (quoting *U.S. Commodity Futures Trading Comm'n v. Kraft Foods Grp.*, 195 F. Supp. 3d 996, 1008 (N.D. Ill. 2016)).

Richards argues that interlocutory appeal would only incur delay in the matter.  She maintains that such an appeal would "serve to prolong the inevitable" (Filing No. 92 at 18) since, by her reasoning, the issuance of notice would still be warranted even were Eli Lilly's sought-after standard adopted.  *See id.* at 18–19.  Eli Lilly clarifies it seeks only a limited stay of the issuance of notice (*see* Filing No. 94 at 12).  It further argues that continuing discovery while the appeal is resolved strikes an appropriate balance between allowing Richards' claims to proceed and potential clarification of an issue which may avoid protracted and expensive litigation.  Eli Lilly asserts that discovery is more complex in this case, and that discovery will take longer than ten months[2] — a span of time which Richards points to and which constitutes, as of September 2023, the median time for a civil appeal in this Circuit to reach a last opinion or final order (*see* Filing No. 92 at 18;

---

[2] The Court recognizes that the parties initially agreed to a period of less than ten months for liability and non-expert discovery (*see* Filing No. 31).  Since then, however, the parties have sought and the Court has granted several discovery deadline extensions (*see* Filing No. 57; Filing No. 59; Filing No. 71; Filing No. 84), and the Court has had to referee an extensive discovery dispute arising out of Richards' individual claims (*see* Filing No. 95).

Table B-4A, U.S. Courts of Appeals – Median Time Intervals, During the 12-Month Period Ending September 30, 2022, *available at* https://www.uscourts.gov/sites/default/files/data_tables/jb_b4a_0930.2023.pdf).

As a practical matter, an immediate appeal will — or, at the very least, *may* — materially advance the ultimate resolution of this litigation by resolving uncertainty about the proper scope of the collective as it proceeds, first to the opt-in period, then to the conclusion of discovery, and finally to summary judgment.

On one end of the spectrum, a mere affirmance of the Court's order would simply postpone notice and the discovery that follows, which would proceed without a stay in place. At the other end of possibilities, however, awaits the following prospect. Were the reviewing court to hold that the issuance of notice requires a showing by a preponderance of the evidence that similarity across the proposed collective is more likely than not, then the preclusive effect of such a determination, once made, would potentially result in a smaller, but nevertheless final collective being certified at an earlier stage than would be the case otherwise.

Inevitably, such a determination would "materially impact the trial of this matter". *Swales*, 410 F. Supp. 3d at 794. The Court makes the preceding observations about the potential effect or impact, however, without opining on the putative collective as presently conceived, or as to the appropriateness of its scope or size as conditionally granted. The Court is merely pointing out the obvious: clarifying the proper scope of the collective, sooner rather than later, would ultimately serve to expedite, not protract, the eventual resolution in this case.

The Court agrees with the balanced approach presented in granting a limited stay only as it pertains to the issuance of notice but allowing unrelated discovery to continue pending the resolution of the appeal. Permitting all other discovery to continue in the meantime facilitates the

efficient, accurate resolution of this matter, furthers the best interests of the Court and parties, and ensures that the case progresses down the path to the five-day jury trial set to begin in February 2025. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").

## III. <u>CONCLUSION</u>

The Court stands by its decision that Richards has met her step one burden to certify her ADEA claims as a conditional collective action under the FLSA. (Filing No. 82). Nonetheless, Eli Lilly has demonstrated that the Court's March 25, 2024 conditional certification order involves a controlling question of law to which there is substantial ground for difference of opinion and an immediate appeal from the order may materially advance the ultimate termination of litigation. Thus, the Motion to Certify an Immediate Appeal under 28 U.S.C. § 1292(b) and Emergency Motion for a Stay (Filing No. 88) is **GRANTED**.

The Court now **CERTIFIES** the following question for interlocutory appeal:

> Whether notice in a collective action can issue based on a modest factual showing of similarity, rather than upon a showing by a preponderance of the evidence that requires the Court to find that commonality across the collective is more likely than not.

*Id.* at 11. The Court **ORDERS** the statute of limitations for members of the conditionally certified collective defined in its March 25, 2024 order, Filing No. 82, to be tolled pending notification of a decision from the Seventh Circuit Court of Appeals.

Additionally, the Court **STAYS** the issuance of notice to members of the putative collective and the deadline imposed on Eli Lilly to provide members' contact information, which it had previously stayed on an interim basis in contemplation of issuing this ruling (*see* Filing No. 89).

Today's limited stay is meant to preserve the status quo only as it relates to the issuance of notice, and the parties are advised that all other discovery is to proceed as it normally would.

The parties are to confer and submit to the Magistrate Judge a joint proposed scheduling order in line with the requirements set forth in the conclusion of the Court's April 23, 2024 Order on Richards' Motion to Compel Discovery (Filing No. 95) **within ten (10) days** of the date of Order.

**SO ORDERED**.

Date:   5/10/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jane Farrell
Lichten & Liss-Riordan PC
jfarrell@llrlaw.com

Thomas Fowler
Lichten & Liss-Riordan, P.C.
tfowler@llrlaw.com

Katherine Funderburg
Jenner & Block LLP
kfunderburg@jenner.com

Harold Lichten
Lichten & Liss-Riordan
hlichten@llrlaw.com

Jeffrey A. Macey
Macey Swanson LLP
jmacey@maceylaw.com

Matthew Patton
Law Office of Nicholas F. Ortiz P.C.
mdp@mass-legal.com

Joseph Torres
Jenner & Block LLP
jtorres@jenner.com

Jacob Wentzel
Jenner & Block LLP
jwentzel@jenner.com

Joanna Wright
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036

**U.S. District Court**
**Southern District of Indiana (Indianapolis)**
**CIVIL DOCKET FOR CASE #: 1:23–cv–00242–TWP–MKK**

RICHARDS v. ELI LILLY & COMPANY et al
Assigned to: Judge Tanya Walton Pratt
Referred to: Magistrate Judge M. Kendra Klump
Cause: 29:621 Job Discrimination (Age)

Date Filed: 02/07/2023
Jury Demand: Plaintiff
Nature of Suit: 442 Civil Rights: Jobs
Jurisdiction: Federal Question

**Plaintiff**

**MONICA RICHARDS**
*individually and on behalf of all other*
*similarly situated individuals*

represented by **Harold Lichten**
Lichten & Liss–Riordan
729 Boylston St
Ste 2000
Boston, MA 02116
617–994–5800
Email: hlichten@llrlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey A. Macey**
Macey Swanson LLP
429 N. Pennsylvania Street
Ste 204
Indianapolis, IN 46204
317–637–2345
Email: jmacey@maceylaw.com
*ATTORNEY TO BE NOTICED*

**Matthew Patton**
Law Office of Nicholas F. Ortiz P.C.
One Boston Place
Ste 2600
Boston, MA 02108
617–338–9400
Email: mdp@mass–legal.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas Fowler**
Lichten & Liss–Riordan, P.C.
729 Boylston Street
Ste 2000
Boston, MA 02116
617–994–5800
Fax: 617–994–5800
Email: tfowler@llrlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**ELI LILLY & COMPANY**

represented by **Jacob Wentzel**
Jenner & Block LLP
IL
353 N Clark St
Chicago, IL 60654
312–982–4729
Email: jwentzel@jenner.com
*ATTORNEY TO BE NOTICED*

**Joanna Wright**
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 891−1600
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan M Linas**
Jones Day
110 N. Wacker Drive
Suite 4800
Chicago, IL 60606
312−269−4245
Email: jlinas@jonesday.com
*ATTORNEY TO BE NOTICED*

**Joseph Torres**
Jenner & Block LLP
353 N Clark street
Chicago, IL 60654
312−840−8685
Email: jtorres@jenner.com
*ATTORNEY TO BE NOTICED*

**Katherine Funderburg**
Jenner & Block LLP
353 N. Clark St.
Chicago, IL 60654
312−840−7398
Email: kfunderburg@jenner.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**LILLY USA, LLC**                     represented by     **Jacob Wentzel**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jonathan M Linas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph Torres**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katherine Funderburg**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/07/2023 | 1 | COMPLAINT against All Defendants, filed by All Plaintiffs. (Filing fee $402, receipt number AINSDC−7494197) (Attachments: # 1 Civil Cover Sheet, # 2 Proposed Summons)(Macey, Jeffrey) (Entered: 02/07/2023) |
| 02/07/2023 | 2 | NOTICE of Appearance by Jeffrey A. Macey on behalf of Plaintiff MONICA RICHARDS. (Macey, Jeffrey) (Entered: 02/07/2023) |
| 02/08/2023 | 3 | Summons Issued as to ELI LILLY & COMPANY and LILLY USA, LLC. (DJH) (Entered: 02/08/2023) |
| 02/08/2023 | 4 | MAGISTRATE JUDGE's NOTICE of Availability to Exercise Jurisdiction issued. (DJH) (Entered: 02/08/2023) |

| 02/09/2023 | 5 | ORDER OF RECUSAL. Clerk is directed to randomly reassign case and notify parties of newly assigned Judge. Signed by Judge James R. Sweeney II on 02/09/2023. (SNB) (Entered: 02/09/2023) |
|---|---|---|
| 02/09/2023 | 6 | NOTICE of Reassignment of Case to Judge Tanya Walton Pratt. Judge James R. Sweeney II is no longer assigned to this case. Please include the new case number, **1:23−cv−00242−TWP−MJD**, on all future filings in this matter. (DRB) (Entered: 02/09/2023) |
| 02/14/2023 | 7 | ORDER REASSIGNING CASE. Clerk is directed to reassign case to Magistrate Judge M. Kendra Klump for all further proceedings. This case is related to 1:22−cv−01882−TWP−MKK. Magistrate Judge Mark J. Dinsmore no longer assigned to case. Signed by Judge Tanya Walton Pratt on 2/14/2023. (TRG) (Entered: 02/14/2023) |
| 02/14/2023 | 8 | NOTICE of Reassignment of Case to Magistrate Judge M. Kendra Klump. Magistrate Judge Mark J. Dinsmore is no longer assigned to this case. Please include the new case number, **1:23−cv−242−TWP−MKK**, on all future filings in this matter. (DJH) (Entered: 02/14/2023) |
| 03/03/2023 | 9 | MOTION for Attorney(s) Harold Lichten to Appear pro hac vice (Filing fee $100, receipt number AINSDC−7529857), filed by Plaintiff MONICA RICHARDS. (Attachments: # 1 Text of Proposed Order Granting Motion to Appear Pro Hac Vice for Harold Lichten)(Lichten, Harold) (Entered: 03/03/2023) |
| 03/03/2023 | 10 | MOTION for Attorney(s) Thomas Fowler to Appear pro hac vice (Filing fee $100, receipt number AINSDC−7529893), filed by Plaintiff MONICA RICHARDS. (Attachments: # 1 Text of Proposed Order Granting Motion to Appear Pro Hac Vice for Thomas Fowler)(Fowler, Thomas) (Entered: 03/03/2023) |
| 03/03/2023 | 11 | MOTION for Attorney(s) Matthew Patton to Appear pro hac vice (Filing fee $100, receipt number AINSDC−7529911), filed by Plaintiff MONICA RICHARDS. (Attachments: # 1 Text of Proposed Order Granting Motion to Appear Pro Hac Vice for Matthew Patton)(Patton, Matthew) (Entered: 03/03/2023) |
| 03/03/2023 | 12 | NOTICE of Appearance by David D. Leishman on behalf of Defendants ELI LILLY & COMPANY, LILLY USA, LLC. (Leishman, David) (Entered: 03/03/2023) |
| 03/03/2023 | 13 | NOTICE of Parties' First Extension of Time re Filing a response to pleading defined by Fed. R. Civ. P. 7(a), filed by Defendants ELI LILLY & COMPANY, LILLY USA, LLC. (Leishman, David) (Entered: 03/03/2023) |
| 03/06/2023 | 14 | NOTICE of Appearance by Michael Ross Phillips on behalf of Defendants ELI LILLY & COMPANY, LILLY USA, LLC. (Phillips, Michael) (Entered: 03/06/2023) |
| 03/06/2023 | 15 | NOTICE of Appearance by Melissa M. Weiss on behalf of Defendants ELI LILLY & COMPANY, LILLY USA, LLC. (Weiss, Melissa) (Entered: 03/06/2023) |
| 03/06/2023 | 16 | NOTICE of Appearance by Joel H. Spitz on behalf of Defendants ELI LILLY & COMPANY, LILLY USA, LLC. (Spitz, Joel) (Entered: 03/06/2023) |
| 03/08/2023 | 17 | ORDER granting 9 Motion to Appear pro hac vice. Attorney Harold Lichten for MONICA RICHARDS added. Signed by Magistrate Judge M. Kendra Klump on 3/8/2023. (SWM) (Entered: 03/09/2023) |
| 03/08/2023 | 18 | ORDER granting 10 Motion to Appear pro hac vice. Attorney Thomas Fowler for MONICA RICHARDS added. Signed by Magistrate Judge M. Kendra Klump on 3/8/2023. (SWM) (Entered: 03/09/2023) |
| 03/08/2023 | 19 | ORDER granting 11 Motion to Appear pro hac vice. Attorney Matthew Patton for MONICA RICHARDS added. Signed by Magistrate Judge M. Kendra Klump on 3/8/2023. (SWM) (Entered: 03/09/2023) |
| 03/10/2023 | 20 | NOTICE of of Filing of Opt−in Consent Form, filed by Plaintiff MONICA RICHARDS (Attachments: # 1 Exhibit A − Monica Richards Opt−in Form) (Lichten, Harold) (Entered: 03/10/2023) |
| 03/15/2023 | 21 | SCHEDULING ORDER:Telephonic Initial Pretrial Conference set for 4/13/2023 09:00 AM (Eastern Time) before Magistrate Judge M. Kendra Klump. The court will |

| | | contact counsel by separate email through the court's electronic filing system with the call−in information to be used to participate in the conference. Read this entire order carefully; it sets out the court's expectations for the conference. Signed by Magistrate Judge M. Kendra Klump on 3/15/2023.(SWM) (Entered: 03/16/2023) |
|---|---|---|
| 04/06/2023 | 22 | ANSWER to 1 Complaint , filed by ELI LILLY & COMPANY, LILLY USA, LLC.(Phillips, Michael) (Entered: 04/06/2023) |
| 04/06/2023 | 23 | CASE MANAGEMENT PLAN TENDERED, filed by Plaintiff MONICA RICHARDS . (Lichten, Harold) (Entered: 04/06/2023) |
| 04/07/2023 | 24 | Notice to File Rule 7.1 Disclosure Statement. (RAGS) (AKH) (Entered: 04/07/2023) |
| 04/11/2023 | 26 | Rule 7.1 Disclosure Statement by LILLY USA, LLC identifying Corporate Parent ELI LILLY AND COMPANY for LILLY USA, LLC.. (Phillips, Michael) (Entered: 04/11/2023) |
| 04/11/2023 | 27 | Rule 7.1 Disclosure Statement by ELI LILLY & COMPANY. (Phillips, Michael) (Entered: 04/11/2023) |
| 04/12/2023 | 28 | NOTICE of Appearance by Joseph Torres on behalf of Defendants ELI LILLY & COMPANY, LILLY USA, LLC. (Torres, Joseph) (Entered: 04/12/2023) |
| 04/12/2023 | 29 | NOTICE of Appearance by Katherine Funderburg on behalf of Defendants ELI LILLY & COMPANY, LILLY USA, LLC. (Funderburg, Katherine) (Entered: 04/12/2023) |
| 04/13/2023 | 30 | MINUTE ORDER for Telephonic Initial Pretrial Conference held before Magistrate Judge M. Kendra Klump on 4/13/2023. Telephonic Status Conference set for 6/29/2023 at 10:00 AM (Eastern Time) before Magistrate Judge M. Kendra Klump. See Minute Order for further information. Signed by Magistrate Judge M. Kendra Klump. (BAS) (Entered: 04/14/2023) |
| 04/14/2023 | 31 | ORDER: CASE MANAGEMENT PLAN APPROVED AS AMENDED. Dispositive Motions due by 2/7/2024. Discovery due by 12/7/2023. Signed by Magistrate Judge M. Kendra Klump on 4/14/2023.(SWM) (Entered: 04/14/2023) |
| 04/14/2023 | 32 | ORDER REGARDING DISCOVERY DISPUTES. See Order. Signed by Magistrate Judge M. Kendra Klump on 4/14/2023.(SWM) (Entered: 04/14/2023) |
| 04/14/2023 | 33 | ORDER REGARDING PROTECTIVE ORDERS. See Order. Signed by Magistrate Judge M. Kendra Klump on 4/14/2023.(SWM) (Entered: 04/14/2023) |
| 04/20/2023 | 34 | Exhibit List *Preliminary*, filed by Plaintiff MONICA RICHARDS. (Lichten, Harold) (Entered: 04/20/2023) |
| 04/20/2023 | 35 | Witness List *Preliminary*, filed by Plaintiff MONICA RICHARDS. (Lichten, Harold) (Entered: 04/20/2023) |
| 05/04/2023 | 36 | Witness List */ Defendants' Preliminary Witness and Exhibit Lists*, filed by Defendants ELI LILLY & COMPANY, LILLY USA, LLC. (Torres, Joseph) (Entered: 05/04/2023) |
| 06/29/2023 | 38 | MINUTE ORDER for Telephonic Status Conference held before Magistrate Judge M. Kendra Klump on 6/29/2023. Telephonic Status Conference set for 10/3/2023 at 9:00 AM (Eastern Time) before Magistrate Judge M. Kendra Klump. See Minute Order for further information. Signed by Magistrate Judge M. Kendra Klump. (BAS) (Entered: 06/30/2023) |
| 07/07/2023 | 39 | MOTION to Withdraw Attorney Appearance , filed by Defendants ELI LILLY & COMPANY, LILLY USA, LLC. (Attachments: # 1 Text of Proposed Order)(Phillips, Michael) (Entered: 07/07/2023) |
| 07/17/2023 | 40 | ORDER − granting 39 Motion to Withdraw Attorney Appearance. Attorney Joel H. Spitz; Melissa M. Weiss; David D. Leishman and Michael Ross Phillips withdrawn. Signed by Magistrate Judge M. Kendra Klump on 7/17/2023. (JSR) (Entered: 07/17/2023) |

| 07/17/2023 | 41 | MOTION to Certify Class *Conditional Certification and Issuance of Notice and Opt−in Form*, filed by Plaintiff MONICA RICHARDS. (Lichten, Harold) (Entered: 07/17/2023) |
|---|---|---|
| 07/17/2023 | 42 | BRIEF/MEMORANDUM in Support re 41 MOTION to Certify Class *Conditional Certification and Issuance of Notice and Opt−in Form* , filed by Plaintiff MONICA RICHARDS. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Lichten, Harold) (Entered: 07/17/2023) |
| 07/20/2023 | 43 | MOTION for Extension of Time to File Response to 08/14/2023 re 41 MOTION to Certify Class *Conditional Certification and Issuance of Notice and Opt−in Form (Unopposed)*, filed by Defendants ELI LILLY & COMPANY, LILLY USA, LLC. (Attachments: # 1 Text of Proposed Order)(Torres, Joseph) (Entered: 07/20/2023) |
| 07/21/2023 | 44 | ORDER granting 43 MOTION for Extension of Time to File Response to 08/14/2023 re 41 MOTION for Conditional Certification and Issuance of Notice and Opt−In Form. Signed by Judge Tanya Walton Pratt on 7/21/2023. (KAA) (Entered: 07/21/2023) |
| 08/14/2023 | 45 | RESPONSE in Opposition re 41 MOTION to Certify Class *Conditional Certification and Issuance of Notice and Opt−in Form* , filed by Defendants ELI LILLY & COMPANY, LILLY USA, LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 1 − A, # 3 Exhibit 1 − B, # 4 Exhibit 1 − C, # 5 Exhibit 1 − D, # 6 Exhibit 1 − E, # 7 Exhibit 2, # 8 Exhibit 3, # 9 Exhibit 4, # 10 Exhibit 5, # 11 Exhibit 6, # 12 Exhibit 7)(Torres, Joseph) (Entered: 08/14/2023) |
| 08/16/2023 | 46 | Unopposed MOTION for Extension of Time to File Reply to September 6, 2023 re 41 MOTION to Certify Class *Conditional Certification and Issuance of Notice and Opt−in Form* , filed by Plaintiff MONICA RICHARDS. (Attachments: # 1 Text of Proposed Order)(Lichten, Harold) (Entered: 08/16/2023) |
| 08/17/2023 | 47 | ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR EXTENSION − granting 46 Unopposed MOTION for Extension of Time to File Reply to September 6, 2023 re 41 MOTION to Certify Class. Signed by Judge Tanya Walton Pratt on 8/17/2023. (KAA) (Entered: 08/17/2023) |
| 08/28/2023 | 48 | NOTICE of Appearance by Jacob Wentzel on behalf of Defendants ELI LILLY & COMPANY, LILLY USA, LLC. (Wentzel, Jacob) (Entered: 08/28/2023) |
| 09/06/2023 | 49 | REPLY in Support of Motion re 41 MOTION to Certify Class *Conditional Certification and Issuance of Notice and Opt−in Form* , filed by Plaintiff MONICA RICHARDS. (Lichten, Harold) (Entered: 09/06/2023) |
| 09/06/2023 | 50 | MOTION for Protective Order , filed by Defendants ELI LILLY & COMPANY, LILLY USA, LLC. (Attachments: # 1 Exhibit 1)(Torres, Joseph) (Entered: 09/06/2023) |
| 09/06/2023 | 51 | MOTION *for Entry of Stipulation and Order Concerning Protocol for Production of ESI*, filed by Defendants ELI LILLY & COMPANY, LILLY USA, LLC. (Attachments: # 1 Text of Proposed Order 1)(Torres, Joseph) (Entered: 09/06/2023) |
| 09/11/2023 | 52 | ORDER granting 50 Motion for Protective Order. Uniform Stipulated Protective Order entered. See Order for details. Signed by Magistrate Judge M. Kendra Klump on 9/11/2023. (LBT) (Entered: 09/12/2023) |
| 09/21/2023 | 53 | STIPULATION AND ORDER CONCERNING PROTOCOL FOR PRODUCTION OF ESI − SEE ORDER. Signed by Magistrate Judge M. Kendra Klump on 9/21/2023.(JRB) (Entered: 09/22/2023) |
| 10/03/2023 | 55 | MINUTE ORDER for Telephonic Status Conference held before Magistrate Judge M. Kendra Klump on 10/3/2023. Telephonic Status Conference set for 1/8/2024 at 10:00 AM (Eastern Time) before Magistrate Judge M. Kendra Klump. See Minute Order for further information. Signed by Magistrate Judge M. Kendra Klump. (BAS) (Entered: 10/04/2023) |
| 10/26/2023 | 56 | NOTICE of Filing *Opt−in Consent Form* by MONICA RICHARDS (Attachments: **DISREGARD − STRICKEN AT 82 ** # 1 Opt−in Consent Form) (Lichten, Harold) Modified on 3/26/2024 (KAA). (Entered: 10/26/2023) |

| 11/08/2023 | 57 | Joint MOTION for Extension of Time to Complete Fact Discovery , filed by Defendants ELI LILLY & COMPANY, LILLY USA, LLC. (Attachments: # 1 Proposed Order)(Torres, Joseph) (Entered: 11/08/2023) |
|---|---|---|
| 11/10/2023 | 58 | MOTION to Strike *Opt–In Consent Form*, filed by Defendants ELI LILLY & COMPANY, LILLY USA, LLC. (Torres, Joseph) (Entered: 11/10/2023) |
| 11/13/2023 | 59 | ORDER granting 57 Motion for Extension of Time – The December 7, 2023, deadline for the completion of non–expert discovery is extended until January 7, 2024. Signed by Magistrate Judge M. Kendra Klump on 11/13/2023.(JRB) (Entered: 11/14/2023) |
| 11/22/2023 | 60 | RESPONSE in Opposition re 58 MOTION to Strike *Opt–In Consent Form* , filed by Plaintiff MONICA RICHARDS. (Lichten, Harold) (Entered: 11/22/2023) |
| 11/29/2023 | 61 | REPLY in Support of Motion re 58 MOTION to Strike *Opt–In Consent Form* , filed by Defendants ELI LILLY & COMPANY, LILLY USA, LLC. (Torres, Joseph) (Entered: 11/29/2023) |
| 11/30/2023 | 62 | MOTION for Attorney(s) Joanna Wright to Appear pro hac vice (Filing fee $100, receipt number AINSDC–7923641), filed by Defendants ELI LILLY & COMPANY, LILLY USA, LLC. (Attachments: # 1 Text of Proposed Order)(Torres, Joseph) (Entered: 11/30/2023) |
| 12/01/2023 | 63 | ORDER granting 62 Motion to Appear pro hac vice. Attorney Joanna Wright for ELI LILLY & COMPANY added. Applicant shall register for electronic filing, as required by Local Rule 5–3, within ten (10) days of the entry of this Order. Signed by Magistrate Judge M. Kendra Klump on 12/1/2023 (Copy mailed to Joanna Wright). (LBT) (Entered: 12/01/2023) |
| 12/13/2023 | 64 | Joint MOTION for Extension of Time to 7 Days After the Close of Fact Discovery / *Joint Motion for Extension of Deadline to File Statement of Claims or Defenses*, filed by Defendants ELI LILLY & COMPANY, LILLY USA, LLC. (Attachments: # 1 Text of Proposed Order)(Torres, Joseph) (Entered: 12/13/2023) |
| 12/15/2023 | 65 | MOTION for Attorney(s) Jane Farrell to Appear pro hac vice (Filing fee $100, receipt number AINSDC–7945829), filed by Plaintiff MONICA RICHARDS. (Attachments: # 1 Text of Proposed Order)(Farrell, Jane) (Entered: 12/15/2023) |
| 12/19/2023 | 66 | MOTION *for a Discovery Conference*, filed by Plaintiff MONICA RICHARDS. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Lichten, Harold) (Entered: 12/19/2023) |
| 12/20/2023 | 67 | ORDER granting 65 Motion to Appear pro hac vice. Attorney Jane Farrell for MONICA RICHARDS added. SEE ORDER. Signed by Magistrate Judge M. Kendra Klump on 12/20/2023. (JRB) (Entered: 12/20/2023) |
| 12/20/2023 | 68 | Submission of Proposed Order , re 66 MOTION *for a Discovery Conference*, filed by Plaintiff MONICA RICHARDS. (Lichten, Harold) (Entered: 12/20/2023) |
| 12/20/2023 | 69 | SCHEDULING ORDER – Telephonic Discovery Hearing is set for 1/2/2024 09:30 AM (Eastern Time) before Magistrate Judge M. Kendra Klump. Counsel shall attend the status conference by calling the designated telephone number, to be provided by the Court via email generated by the Court's ECF system. No later than December 27, 2023 at 5:00 p.m. (Eastern), each party shall submit a short (no more than 5 pages) summary of the discovery dispute and any documents they wish the Court to review to the Magistrate Judge at MJKlump@insd.uscourts.gov (with a copy to one another). Said summary shall outline the party's position (with citations to any relevant authorities) and proposedresolutions.. Signed by Magistrate Judge M. Kendra Klump on 12/20/2023. (CKM) (Entered: 12/21/2023) |
| 01/02/2024 | 71 | MINUTE ORDER for Telephonic Discovery Conference held before Magistrate Judge M. Kendra Klump on 1/2/2024. See Minute Order for further information and deadlines. Signed by Magistrate Judge M. Kendra Klump. (BAS) (Entered: 01/03/2024) |
| 01/03/2024 | 72 | ORDER – This matter comes before the Court on the parties' Joint Motion for Extension of Time, Dkt. 64 . The Court, having considered the same, hereby finds that said motion should be GRANTED. The December 14, 2023, deadline for filing a statement of claims or defenses is extended until May 3, 2024. Signed by Magistrate |

| | | Judge M. Kendra Klump on 01/03/2024. (AAS) Modified on 1/4/2024 (AAS). (Entered: 01/04/2024) |
|---|---|---|
| 01/03/2024 | 73 | SCHEDULING ORDER – The Court, sua sponte, resets the telephonic status conference currently scheduled for Monday, January 8, 2024, at 10:00 a.m. (Eastern) to Wednesday, 3/20/2024 at 10:00 AM (Eastern Time) before Magistrate Judge M. Kendra Klump. Counsel shall attend the conference by calling the designated telephone number, to be provided by the Court via email generated by the Court's ECF system. Signed by Magistrate Judge M. Kendra Klump on 1/3/2024. (JSR) (Entered: 01/04/2024) |
| 01/10/2024 | 74 | SCHEDULING ORDER:Having approved the Case Management Plan as amended, the Court hereby sets the final pretrial conference on January 8, 2025 at 11:00 a.m. in Room 330, and the jury trial to begin on February 3, 2025 at 9:00 a.m. in Courtroom 344, Birch Bayh Federal Building and United States Courthouse, 46 East Ohio Street, Indianapolis, Indiana. The final pretrial conference is for attorneys only. At the final pretrial conference, Counsel shall be prepared to discuss the status of the action, including all matters requiring completion prior to trial. Counsel shall review the Court's Courtroom Procedures and Trial Practice. See order. Signed by Judge Tanya Walton Pratt on 1/10/2024. (LF) (Entered: 01/10/2024) |
| 01/10/2024 | 75 | COURTROOM PROCEDURES AND TRIAL PRACTICES before Judge Tanya Walton Pratt. (LF) (Entered: 01/10/2024) |
| 01/12/2024 | 76 | MOTION to Compel *Discovery*, filed by Plaintiff MONICA RICHARDS. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Lichten, Harold) (Entered: 01/12/2024) |
| 02/02/2024 | 77 | RESPONSE in Opposition re 76 MOTION to Compel *Discovery* , filed by Defendants ELI LILLY & COMPANY, LILLY USA, LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(Torres, Joseph) (Entered: 02/02/2024) |
| 02/12/2024 | 78 | REPLY in Support of Motion re 76 MOTION to Compel *Discovery* , filed by Plaintiff MONICA RICHARDS. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Farrell, Jane) (Entered: 02/12/2024) |
| 02/27/2024 | 79 | NOTICE *of Supplemental Authority*, filed by Defendants ELI LILLY & COMPANY, LILLY USA, LLC, re 41 MOTION to Certify Class *Conditional Certification and Issuance of Notice and Opt−in Form*. (Attachments: # 1 Exhibit A − Report and Recommendation) (Torres, Joseph) (Entered: 02/27/2024) |
| 03/01/2024 | 80 | RESPONSE *to Defendants' Notice of Supplemental Authority*, re 79 Notice (Other), filed by Plaintiff MONICA RICHARDS. (Lichten, Harold) (Entered: 03/01/2024) |
| 03/25/2024 | 82 | ORDER ON PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION AND DEFENDANTS' MOTION TO STRIKE – Richards has met her step one burden to certify her ADEA claims as a conditional collective action under the FLSA. Her Motion for Conditional Certification and Issuance of Notice and Opt−In Form (Filing No. 41 ) is GRANTED. Eli Lilly's Motion to Strike (Filing No. 58 ) is GRANTED, and Filing No. 56−1 is stricken. Richards is granted leave file a new a consent form for Sweeney that is consistent with this Order. SEE ORDER. Signed by Judge Tanya Walton Pratt on 3/25/2024. (KAA) (Entered: 03/26/2024) |
| 03/26/2024 | 83 | NOTICE *of Supplemental Authority*, filed by Plaintiff MONICA RICHARDS, re 76 MOTION to Compel *Discovery*. (Lichten, Harold) (Entered: 03/26/2024) |
| 03/27/2024 | 84 | MINUTE ORDER for proceedings held before Magistrate Judge M. Kendra Klump: Status Conference held on 3/20/2024. The Parties discussed the status of discovery. Liability discovery is extended until May 27, 2024. Dispositive motion deadline is extended until July 29, 2024. This matter is set for a telephonic status conference on May 15, 2024, at 10:30 a.m. (Eastern), with Magistrate Judge M. Kendra Klump. Should discovery disputes arise and become ripe before the upcoming conference, the parties shall send a joint email to chambers at mjklump@insd.uscourts.gov. Signed by Magistrate Judge M. Kendra Klump. (NAD) (Entered: 03/29/2024) |

| 03/29/2024 | 85 | NOTICE of Withdrawal of Appearance by *Pro Hac Vice Attorney Jane Farrell* on behalf of MONICA RICHARDS (Lichten, Harold) (Entered: 03/29/2024) |
|---|---|---|
| 04/01/2024 | 86 | MARGINAL ENTRY, re 85 Notice of Withdrawal of Appearance − Acknowledged. Signed by Judge Tanya Walton Pratt on 04/01/2024.(AAT) (Entered: 04/01/2024) |
| 04/08/2024 | 87 | NOTICE of Filing *of Revised Notice and Opt−in Form* by MONICA RICHARDS (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order) (Lichten, Harold) (Entered: 04/08/2024) |
| 04/11/2024 | 88 | MOTION / *Defendants' Motion to Certify an Immediate Appeal Under 28 U.S.C. § 1292(b) and Emergency Motion for a Stay*, filed by Defendants ELI LILLY & COMPANY, LILLY USA, LLC. (Torres, Joseph) Modified on 4/16/2024 (SMH). (Entered: 04/11/2024) |
| 04/12/2024 | 89 | ORDER − This matter is before the Court on Defendants' Motion to Certify and Immediate Appear Under 28 U.S.C. § 1292(b) and Emergency Motion for a Stay 88 . Recognizing that the 21−day deadline expires on Monday, April 15, 2024, in its discretion, the Court GRANTS the emergency motion for a stay concerning the deadline for providing contact information. This will give the parties time to fully brief the Motion to Certify and the court an opportunity to issue its ruling on Defendants request for interlocutory appeal. (See Order.) Signed by Judge Tanya Walton Pratt on 4/12/2024. Copy to Joanna Wright via US mail. (JSR) (Entered: 04/15/2024) |
| 04/15/2024 | 90 | Unopposed MOTION for Extension of Time to April 22, 2024 *to File Objections*, filed by Defendants ELI LILLY & COMPANY, LILLY USA, LLC. (Attachments: # 1 Text of Proposed Order)(Torres, Joseph) (Entered: 04/15/2024) |
| 04/16/2024 | 91 | ORDER − This matter comes before the Court on Defendant's Unopposed Motion for Extension of Time, Dkt. 90 . The Court, having considered the same, hereby finds that said motion should be GRANTED. The deadline for Defendants to submit their objections to Plaintiff's proposed notice and opt−in consent forms is extended by one week, until April 22, 2024. Signed by Judge Tanya Walton Pratt on 4/16/2024. (JSR) (Entered: 04/17/2024) |
| 04/17/2024 | 92 | RESPONSE in Opposition re 88 MOTION / *Defendants' Motion to Certify an Immediate Appeal Under 28 U.S.C. § 1292(b) and Emergency Motion for a Stay* , filed by Plaintiff MONICA RICHARDS. (Lichten, Harold) (Entered: 04/17/2024) |
| 04/22/2024 | 93 | OBJECTION / *Defendants' Objections to Plaintiff's Proposed Notice and Opt−In Consent Forms* by ELI LILLY & COMPANY, LILLY USA, LLC. Related document: 87 NOTICE of Filing filed by MONICA RICHARDS. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Torres, Joseph) (Entered: 04/22/2024) |
| 04/22/2024 | 94 | REPLY in Support of Motion re 88 MOTION / *Defendants' Motion to Certify an Immediate Appeal Under 28 U.S.C. § 1292(b) and Emergency Motion for a Stay* , filed by Defendants ELI LILLY & COMPANY, LILLY USA, LLC. (Torres, Joseph) (Entered: 04/22/2024) |
| 04/23/2024 | 95 | ORDER − This matter comes before the Court on Plaintiff's Motion to Compel Defendants to respond to numerous discovery requests, Dkt. 76 . Plaintiff's Motion to Compel, Dkt. 76 , is GRANTED IN PART and DENIED IN PART. More specifically: Plaintiff's Motion is GRANTED as follows. Defendants shall produce material responsive to RFP #21−25, 30−32, 40−42, and 46, and the parties are DIRECTED to meet and confer regarding appropriate custodians and search terms for these requests. Plaintiff's Motion to Compel is GRANTED IN PART as to RFP #13, 15, 16, 26−28, 47−49 and Interrogatories 13−17. Plaintiff's Motion to Compel is DENIED as to RFP #7, 14, 17, and 34. (See Order.) Signed by Magistrate Judge M. Kendra Klump on 4/23/2024. (JSR) (Entered: 04/24/2024) |
| 04/25/2024 | 96 | RESPONSE *to Defendants' Objections to Plaintiff's Proposed Notice and Opt−in Form*, re 93 Objection, filed by Plaintiff MONICA RICHARDS. (Lichten, Harold) (Entered: 04/25/2024) |
| 05/03/2024 | 98 | Unopposed MOTION to Stay re 95 Order on Motion to Compel / *Defendants' Unopposed Motion to Stay Deadline to File Objections Pursuant to Fed. R. Civ. P. 72(a)*, filed by Defendants ELI LILLY & COMPANY, LILLY USA, LLC. (Torres, Joseph) (Entered: 05/03/2024) |

| 05/06/2024 | 99 | ORDER granting 98 Defendants' unopposed Motion to Stay – The Court GRANTS this motion. The deadline for parties to object to (Dkt. 95 ) is STAYED until the Court rules on (Dkt. 88 ). Signed by Magistrate Judge M. Kendra Klump on 05/06/2024. (AAS) (Entered: 05/06/2024) |
| 05/07/2024 | 100 | MOTION for Reconsideration re 95 Order on Motion to Compel , filed by Plaintiff MONICA RICHARDS. (Attachments: # 1 Exhibit A)(Lichten, Harold) (Entered: 05/07/2024) |
| 05/10/2024 | 102 | ENTRY ON DEFENDANTS' MOTION TO CERTIFY AN IMMEDIATE APPEAL UNDER 28 U.S.C. § 1292(b) AND EMERGENCY MOTION FOR A STAY – The Motion to Certify an Immediate Appeal under 28 U.S.C. § 1292(b) and Emergency Motion for a Stay (Filing No. 88 ) is GRANTED. The Court now CERTIFIES the following question for interlocutory appeal: Whether notice in a collective action can issue based on a modest factual showing of similarity, rather than upon a showing by a preponderance of the evidence that requires the Court to find that commonality across the collective is more likely than not. Id. at 11. The Court ORDERS the statute of limitations for members of the conditionally certified collective defined in its March 25, 2024 order, Filing No. 82 , to be tolled pending notification of a decision from the Seventh Circuit Court of Appeals. Additionally, the Court STAYS the issuance of notice to members of the putative collective and the deadline imposed on Eli Lilly to provide members' contact information, which it had previously stayed on an interim basis in contemplation of issuing this ruling (see Filing No. 89 ). Today's limited stay is meant to preserve the status quo only as it relates to the issuance of notice, and the parties are advised that all other discovery is to proceed as it normally would. The parties are to confer and submit to the Magistrate Judge a joint proposed scheduling order in line with the requirements set forth in the conclusion of the Court's April 23, 2024 Order on Richards' Motion to Compel Discovery (Filing No. 95 ) within ten (10) days of the date of Order. See Entry for details. Signed by Judge Tanya Walton Pratt on 5/10/2024 (Copy mailed to Attorney Joanna Wright). (LBT) Modified on 5/13/2024 (LBT). (Entered: 05/13/2024) |
| 05/12/2024 | 101 | Unopposed MOTION for Continuance of May 15, 2024, Telephone Status Conference, filed by Plaintiff MONICA RICHARDS. (Attachments: # 1 Text of Proposed Order)(Lichten, Harold) (Entered: 05/12/2024) |
| 05/13/2024 | 103 | ORDER – This matter comes before the Court on Plaintiff's Unopposed Motion to Reschedule Status Conference, Dkt. 101 . The Court, being duly advised, GRANTS Plaintiff's Motion. The telephone status conference currently scheduled for May 15, 2024, at 10:30 AM is rescheduled for May 23, 2024 at 2:00 p.m (eastern). Counsel are to use the call–in information provided at Dkt. 97 to participate in the conference. Signed by Magistrate Judge M. Kendra Klump on 5/13/2024. (BAA) (Entered: 05/13/2024) |
| 05/13/2024 | 104 | Unopposed MOTION for Extension of Time to May 24, 2024 / Defendants' Unopposed Motion for Extension of Time to File Objections Pursuant to Fed. R. Civ. P. 72(a) and to Stay the Deadline to Submit a Joint Proposed Scheduling Order, filed by Defendants ELI LILLY & COMPANY, LILLY USA, LLC. (Attachments: # 1 Text of Proposed Order)(Torres, Joseph) (Entered: 05/13/2024) |
| 05/14/2024 | 105 | ORDER – This matter comes before the Court on Defendants' Unopposed Motion for Extension of Time, Dkt. 104 . The Court, having considered the same, hereby finds that said motion should be GRANTED–IN–PART. The deadline for Defendants to file their objections to the Order on Plaintiff's Motion to Compel (Dkt. No. 95 ), pursuant to Fed. R. Civ. P. 72(a), is extended to May 24, 2024. (See Order.) Signed by Magistrate Judge M. Kendra Klump on 5/14/2024. (BAA) (Entered: 05/14/2024) |
| 05/17/2024 | 106 | MOTION for Attorney(s) Jonathan M. Linas to Appear pro hac vice (Filing fee $100, receipt number AINSDC−8169168), filed by Defendants ELI LILLY & COMPANY, LILLY USA, LLC. (Attachments: # 1 Text of Proposed Order Granting Motion to Appear Pro Hac Vice (Jonathan M. Linas))(Linas, Jonathan) (Entered: 05/17/2024) |

**RICHARDS v. ELI LILLY & COMPANY et al (1:23−cv−00242−TWP−MKK)**